Moyer's Landfill, Inc., Appellant *v.* Zoning Hearing Board of Lower Providence Township, Appellee.

Argued June 8, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, CRAIG and MACPHAIL.

*Steven H. Lupin, Hamburg, Rubin, Mullin & Maxwell,* for appellant.

*Frederic M. Wentz, McGrory, Wentz, Fernandez & Albright,* for appellee.

OPINION BY JUDGE ROGERS, September 14, 1982:

Moyer's Landfill, Inc. (Moyer), a landowner which seeks zoning approval to use its land in Lower Providence Township, lontgomery County, as a sanitary landfill, and the township[1] have each appealed from an order of the Court of Common Pleas of Montgomery County. The order complained of reversed and the township zoning hearing board's decision that Moyer was required to pay the fees of lawyers and an engineer employed by the township in opposing Moyer's applications; but upheld the board's decision that Moyer was not entitled to establish the proposed sanitary landfill.

## THE TOWNSHIP'S APPEAL

Lower Providence Township's appeal raises the question of the propriety of the trial court's holding and order that the fees of the township's and the zoning hearing board's solicitors and the township's consulting engineer for services in the zoning litigation, in a total amount in excess of $25,000, could not be

---

[1] An association of neighbors participated in some of the zoning hearing board hearings, but not, it seems, in the appeal to the common pleas court and certainly not in the appeal to this court.

charged to Moyer. We affirm this aspect of the trial court's order. Section 907 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, (MPC) 53 P.S. §10907 authorizes zoning hearing boards to employ legal counsel "[w]ithin the limits of funds appropriated by the governing body." The matter of the fees of a zoning hearing board's counsel was the subject of *Borough of Brookhaven v. BP Oil Company*, 48 Pa. Commonwealth Ct. 128, 409 A.2d 494 (1979), where we held that Section 907 provided sufficient indication that the legislature did not intend that the fees of zoning hearing board solicitors should be charged to the persons who present causes for zoning hearing board decisions.

Section 618 of the MPC, 53 P.S. §10618, authorizes the governing body to appropriate money to support or oppose decisions of the zoning hearing board. The township solicitor's participation in this case was directed entirely to opposing Moyer's applications for board and court approval of its project. His fees for thus representing the township were properly payable by the township and not properly chargeable to Moyer as a cost of the proceedings. The township engineer's services were to the same purpose and he must also be paid by the township.

## MOYER'S APPEAL

In its appeals from the denial of its zoning applications first, to the zoning hearing board and then to the common pleas court, Moyer raised, among others, the questions of: (1) whether the township zoning ordinance at the time Moyer applied for the zoning permit was without effect because it unconstitutionally excluded from the township the legitimate use of land for the establishment and operation of a sanitary landfill and (2) whether Moyer was entitled to a special ex-

ception to use its land for a sanitary landfill.[2] These claims will be the principal subjects of this opinion.

In 1974, Moyer acquired a tract of land containing about 47 acres of land in Lower Providence Township on which it has since conducted a sanitary landfill. For many years before Moyer's acquisition — before

---

[2] The additional grounds upon which Moyer asserted that it was entitled to conduct its operations on its new land and the reasons why we believe that the common pleas court properly rejected them are:

(a) That the state had wholly preempted the subject of solid waste management by the Pennsylvania Solid Waste Management Act, Act of July 31, 1968, P.L. 788, *as amended*, 35 P.S. §6001 et seq. (repealed), and its successor the Solid Waste Management Act, Act of July 7, 1980, P.L. 380, 35 P.S. §6018.101 et seq. and that the township had no power by zoning or otherwise to impose any regulation. Since the acts depended on contain no explicit language evincing a legislative intent to override zoning regulations, there was no preemption. *City of Pittsburgh v. Commonwealth*, 468 Pa. 174, 360 A.2d 607 (1976). *Greene Township v. Kuhl*, 32 Pa. Commonwealth Ct. 592, 379 A.2d 1383 (1977), is directly on point.

(b) That when in 1972 Moyer applied for a zoning permit the use of land for a sanitary landfill was permitted in the I-Industrial zoning district under Section 701 of the Lower Providence Township zoning ordinance allowing "commonly known industrial manufacturing pursuits when approved by the Zoning Board of Adjustment." We agree that the operation of a landfill is not a commonly known industrial manufacturing pursuit.

(c) That Section 701 of the zoning ordinance unlawfully delegates zoning powers to the zoning hearing board and therefore is without effect. In *Lower Providence Township & Wood v. Ford*, 3 Pa. Commonwealth Ct. 380, 283 A.2d 731 (1971), we held that Section 701 properly construed, merely permits commonly known industrial manufacturing uses when authorized by special exception granted by the zoning hearing board.

(d) That Moyer was entitled to a variance. This application was properly refused by the zoning board for want of a showing of unnecessary hardship.

there was any zoning in Lower Providence Township or any state regulation of dumping sites and activities — part of this tract was used by its then owners as a dump. After zoning was adopted in Lower Providence Township in 1955 the dumping enterprise continued as a nonconforming use. The zoning ordinance totally excluded the use of land for dumps or sanitary landfills, as they properly came to be called after the imposition of state regulations; further, only residential uses were permitted in the zoning district in which the site was placed.

When, in the late 1960's state regulation of sanitary landfills by statute and rules promulgated first, by the State Department of Health and later and presently by the Department of Environmental Resources (DER), improvements were made to the 47 acre dump and in the methods of its operation. These included the installation of drains, seepage pits and the daily covering of the waste with earth.

In 1971, the then owner of the existing 47 acre, now landfill,[3] filed with DER a so-called Phase I module, the initial requirement for landfill licensing, with respect to the tract of land which is the subject of this litigation. This tract adjoins the existing landfill and contains 131 acres. It was, and remains, located in Lower Providence's I-Industrial zoning district, in which until after the litigation commenced only "commonly known industrial manufacturing pursuits" were permitted uses.

In 1977, the 47 acre site had a remaining useful life as a sanitary landfill of only five to eight years. In that year, the appellant Moyer by agreement of purchase acquired equitable ownership of the 131 acre tract.

---

[3] This was Howard Moyer, Jr. who later became and remains a principal of the appellant Moyer Landfill, Inc.

Having been since 1974 the owner and operator of the 47 acre site and being now the equitable owner of the 131 acre tract, Moyer then formed the purpose of using the 47 acre site until its capacity was exhausted and of then moving to the 131 acre new site and using it for sanitary landfill purposes in parcels of four to five acres each, one at a time, for about five years each, until the capacity of the new tract for landfill purposes would be exhausted in about 45 years. It proposed that the parts of the 131 acre tract not actually devoted to waste disposal would be used to provide cover soil or for buffering the operation from neighbors. To these ends Moyer had engineers prepare and file with DER the more detailed Phase II module for the 131 acre tract. The construction and mode of operation proposed would conform with DER regulations and would include the provision of a liner beneath, and a covering of earth atop, each layer of waste spread upon the four or five acre tract being used for waste disposal and all other features required by DER.

Moyer applied to the zoning officer of Lower Providence Township for permission under the zoning ordinance to use the 131 acre tract for sanitary landfill purposes in early 1977. The application was refused. Moyer then filed with the zoning hearing board an appeal from the zoning officer's action refusing the permit, challenges to the substantive validity of the zoning ordinance and other applications with which it is not necessary to burden the body of this opinion. The zoning hearing board conducted 25 hearings beginning in May, 1977 and ending in May, 1978.

In August, 1977, while the zoning board hearings were in progress, the Board of Supervisors of Lower Providence Township enacted an amendment to the zoning ordinance providing that "solid waste disposal facilities, sanitary landfills and incinerators" should

thereafter be permitted uses in the I-Industrial zoning district when authorized as a special exception. Moyer applied for and obtained from the zoning hearing board leave to amend its zoning case to add an application for a special exception.

The zoning hearing board rejected all of Moyer's requests for relief. Moyer appealed this action to the common pleas court, which on application of the township heard additional evidence and by order filed on June 23, 1981 affirmed the zoning board's action. This appeal followed, requiring us to review the record for error of law or abuse of discretion by the court. *Richman v. Zoning Board of Adjustment*, 391 Pa. 254, 137 A.2d 280 (1958).

As we have noted, Moyer asserts that the zoning ordinance of Lower Providence Township unconstitutionally totally excluded landfills at the time it applied to use the 131 acre tract for landfill purposes. The hearing judge decided this question against Moyer on the authority of language in *Davis v. Board of Supervisors of Easttown Township*, 32 Pa. Commonwealth Ct. 343, 379 A.2d 645 (1977), where Judge, later Justice, ROY WILKINSON, JR., after pronouncing the holding of the case to be that on the facts presented the appellant municipality, whose zoning ordinance had been judicially declared to be unconstitutional for totally excluding a proposed multi-family use, could not, until the ordinance was cured, refuse on the ground of the ordinance an application for a second proposed multi-family use, wrote the following dictum:

> [i]t is possible, however, that at some future time a court of common pleas, confronted with a challenge to the substantive validity of a zoning ordinance on a fair share basis, may decide that while the ordinance is invalid *without* the proposed development plan, it is perfectly valid

*with* the proposed plan. In other words, the very decision of 'the court which invalidates the ordinance at the same time preserves it, albeit in a slightly modified form. (Emphasis in original.)

32 Pa. Commonwealth Ct. at 347, 348, 379 A.2d at 647. The trial judge applied this language to the case at hand and concluded that the presence of Moyer's existing and non-conforming landfill preserved the validity of the ordinance despite its total exclusion of landfills.

The present case, unlike *Davis*, is not about housing needs where the issue is that of whether the ordinance evidences the municipality's purpose not to accept its fair share of the area's residential needs (a subject illuminated and definitively treated in *Surrick v. Zoning Hearing Board of Upper Providence Township*, 476 Pa. 182, 382 A.2d 105 (1977) ); but that of whether the ordinance totally excluded a legitimate business use under the principle announced in *Exton Quarries, Inc. v. Zoning Board of Adjustment*, 425 Pa. 43, 228 A.2d 169 (1967), that such a proscription may stand only where a substantial relationship of the ban to health, safety and the general welfare appears, enlarged upon in *Beaver Gasoline Co. v. Osborne Borough*, 445 Pa. 571, 285 A.2d 501 (1971), first explicitly imposing on the municipality the duty of persuading the tribunal that a total ban of a legitimate business use bore a substantial relationship to the public health, safety, and general welfare. As is evident, the concepts of fair share used in cases involving exclusion of housing types and that of relationship to health, safety and general welfare employed in cases involving exclusion of business uses tend to merge. The existence of a plethora of multi-family dwellings available to persons of low and moderate income may sufficiently show that a municipality has provided its

fair share of such use, justifying a present exclusion; and the presence of numbers of enterprises engaged in a particular business may sufficiently demonstrate a substantial relationship to health, safety, and the general welfare, justifying a ban on more. *See Paradise Township v. Mt. Airy Lodge,* Pa. Commonwealth Ct. , A.2d , (No. 1336 C. D. 1981, filed September 1, 1982), where we declared in a business exclusion case that "non-conforming uses may constitute an element in a total environmental picture justifying an exclusion."

We disagree with the trial court, however, that Moyer's existing landfill alone sufficiently demonstrated a substantial relationship of the ordinance's exclusion of all landfills to the health, safety, and general welfare of the community. As the record shows, the capacity of the existing landfill was limited to four of five years' use and the new facility was proposed for use only when the existing landfill had reached capacity.

Further, the fact that the township's governing body amended the ordinance to permit the use of the very land which is the subject of this suit for sanitary landfill use by special exception a few months after Moyer filed its challenge, represents the respondent township's decision that the existing landfill was no reason for a total ban.

This aspect of the case — the constitutional validity of the ordinance as it existed when Moyer applied for its zoning permit — is controlled by *General Battery Corporation v. The Zoning Hearing Board of Alsace Township,* 29 Pa. Commonwealth Ct. 498, 371 A.2d 1030 (1977). We there held that a zoning ordinance which made no provision for industry or industry-related uses must fall before the challenge of a land-owner desiring to establish a waste disposal facility adjacent to its lead-smelting business, for the reasons:

that the showing of a total exclusion of a legitimate business or industrial use of land overcomes the presumed validity of a zoning ordinance; that the presumption of validity being overcome, the burden shifts to the municipality to establish the legitimacy of prohibition by establishing what interest within the police power *is* sought to be protected; that industrial waste disposal facilities are a legitimate use of land, that is, not a use the total exclusion of which is prima facie designed to protect public health, safety and welfare; that the municipality was required to establish that by totally excluding waste disposal facilities it endeavored to protect public interests which the zoning statutes permit it to protect; and that it did not accomplish this by showing only that the specific waste disposal facility might have detrimental effect. We reproduce portions of *General Battery*:

> We hold that the total exclusion of in-dustrial waste disposal facilities in Alsace Township shifts the burden of proof to the municipality. In this connection, we note the comprehensive role of an active and proficient department of this Commonwealth which has been entrusted with the duty of controlling and supervising the type of activity with which we are concerned. Under the authority of the Pennsylvania Solid Waste Management Act,[4] the Pennsylvania Department of Environmental Resources is given broad power to regulate waste disposal systems. In addition, the Depart-ment is authorized to use a wide variety of methods to protect and preserve the quality of our water.[5] Under these circumstances, we con-clude that waste disposal facilities do not have the obvious potential for polluting air or water or otherwise creating uncontrollable health or

safety hazards. Nor do common knowledge and experience suggest other clearly deleterious effects which would inevitably be visited upon the public in general. We therefore conclude that waste disposal facilities under the diligent control of the Department do not embody a use, the total exclusion of which appears prima facie to be designed to protect the public health, safety and welfare. Concomitantly, the burden shifts to Alsace Township to justify the exclusionary zoning ordinance.

We hold that Alsace Township has not carried its burden. In particular, we are unpersuaded that the township has established that by excluding the activity in issue it endeavored to protect those public interests which zoning statutes permit municipalities to protect. Before the Board, the township sought by cross-examination of General Battery's witnesses to establish that the specific disposal facility contemplated, a landfill with a liner and a system of tanks designed to protect against the possible leaching into the soil of compounds produced in General Battery's lead-smelting operations, might have detrimental effects. However, this evidence, dealing as it does with the application of the ordinance to General Battery's proposed use of its land, is not dispositive on the issue of the ordinance's facial invalidity. Obviously, a zoning ordinance may be invalid as a whole although not in relation to specific property.... We conclude that whether a possibility exists that General Battery's activity might have detrimental effects does not justify a total exclusion of all industrial waste disposal facilities.

---

[4] Act of July 31, 1968, P.L. 788, *as amended*, 35 P.S. §§6001-6017.

[5] *See* Act of June 22, 1937, P.L. 1937, *as amended,* 35 P.S. §691.1 et seq. (known as The Clean Streams Law).

29 Pa. Commonwealth Ct. at 502-503, 371 A.2d at 1032. (Citation omitted.)

All of this is applicable to the circumstances of this case. The statutes cited govern the establishment and operations of sanitary landfills as well as depositories of industrial waste, DER's regulatory powers have been extensively exercised with respect to sanitary landfills and, as this record shows with respect to Moyer's existing landfill, are diligently pursued. Further, the township's whole case was devoted to attempting to establish that to permit Moyer to establish its landfill operation on the 131 acre site would have detrimental effect at the site and its environs whereas Moyer's constitutional challenge was to the facial validity of the ordinance, not to its effect upon the use of this property. There is little or nothing concerning the township or the region as a whole, its population, its present and likely future land use development, or other characteristics from which any conclusion concerning the general public interests which might be benefited by the total exclusion of sanitary landfills could be formed. In this respect, the case presented by the municipality here is much different from that endeavored to be made, but found wanting, by the township whose ordinance totally excluding quarrying was struck down in *Exton Quarries, supra.*

In short, because the zoning ordinance totally prohibited the use of land for the conduct of the legitimate business of operating sanitary landfills,[4] and because the township failed to prove that the ordinance bore a substantial relationship to health, safety,

---

[4] The township does not contest the legitimacy of the business of the operating sanitary landfills, nor could such a contest prevail. Sanitary landfills are the subject of more than 220 pages of DER regulations appearing at 25 Pa. Code §75.1 *et seq.*

and welfare, it was unconstitutional. It follows that Moyer is entitled to the definitive relief of an order directing that its requested zoning permit be issued. *Casey v. Zoning Hearing Board of Warwick Township*, 459 Pa. 219, 328 A.2d 464 (1974).

The trial court, having rejected Moyer's constitutional challenge, then considered the matter of whether Moyer was entitled to a special exception and again ruled in the township's favor, concluding that the proposal would be detrimental to health, safety and welfare. Again, we are constrained to disagree. The applicant who shows that the use he proposes is permitted by special exception and that the specific requirements of the ordinance are met has demonstrated that what he proposes is something which the governing body of the municipality has determined should be allowed, is appropriate, and presumptively consistent with health, safety and general welfare. *Archbishop O'Hara's Appeal*, 389 Pa. 35, 131 A.2d 587 (1957). The burden of persuasion that general non-objective standards contained in the ordinance, the only kind appearing in the Lower Providence Zoning ordinance, cannot be complied with is on the party objecting to the application.[5] *Borden Appeal*, 369 Pa. 517, 87 A.2d 465 (1952); *Zoning Hearing Board v. Konyk*, 5 Pa. Commonwealth Ct. 466, 290 A.2d 715 (1972). A use

---

[5] Section 702.203 of the amendatory ordinance adopted in August, 1977, first lists by name, under letters a through d, uses permitted in the I-Industrial district by special exception, including sanitary landfills; it then under the letter e also permits any other uses of the same general character provided that the applicant shows that provision has been made adequately to reduce "noxious, offensive, dangerous or hazardous features." This provision seems only to apply to uses other than those specifically named. In any case, Moyer's engineering witness whose designs for the landfill were submitted, testified that he had provided every feature required by DER regulations, which as a perusal of the regulations reveals, are directly to the purpose of reducing noxious, offensive, dangerous or hazardous features of sanitary landfills.

permitted by special exception is a permitted use, and the burden of persuasion that health safety and welfare will be adversely affected is not satisfied by showing effects no different from or greater than those which normally attend the thus permitted use. *Archbishop O'Hara's Appeal, supra; Lower Providence Township & Wood v. Ford,* 3 Pa. Commonwealth Ct. 380, 283 A.2d 731 (1971).

A review of the whole of this vast record compels the conclusion that the township's evidence consisted in the main of complaints of persons resident in the vicinity of the existing landfill or occasional litter on the roads near the site, of truck traffic, or inadequate maintenance of the roads near the site assertedly damaged by truck traffic, of the occasional sound of bulldozers working at the site, of occasional odors and of the assertedly unsightly hill which would be created as successive layers of liners, waste and soil were placed on the site. There is no evidence that these effects are other than those which occasionally normally attend sanitary landfills and, indeed, since they were all descriptive of events at the existent site must have been things known to the governing body when it made the legislative judgment that the land adjacent to that site was an appropriate location for the landfill use.

The evidence given by the township's expert witness, a civil engineer who had been once employed as a hydrologist by DER and who during that employment had been occasionally called upon to review and consult on landfills "so far as they were affecting the ground and water resources," is unpersuasive. He testified that the Phase I module approved in 1972 would not as of the date of hearing in 1977 be approved because of new regulations including the requirement of a liner which he himself pointed out as included in Moyer's design proffered at the hearing; that a more appropriate site for a landfill would be a

depression, not this level site; that he did not think that there was sufficient cover material on the site; that the site is underlain with rock which would be "very hard" to excavate; and that he did not think that the site was appropriate because there could be problems with leachate getting into ground water and tributaries of streams in the vicinity; and that there might also be problems from rain water run-off. All of these matters are the subject of DER requirements which must be met before licensing and of regulation and sanction, including closure action, after operations are begun. Most of them were surely things within the ken of the governing body when, during these proceedings, it amended the zoning ordinance so as to permit use of this tract for a sanitary landfill. The township's evidence fell short of proving by the standard required by the law that the proposed landfill would be so detrimental to health, safety and welfare of the community that the special exception should not have issued.

We will affirm the order below insofar as it disallows the imposition of the township's costs for services of its and the zoning hearing board's counsel and of its consulting engineer upon the petitioner; we reverse the order below insofar as it affirms the order of the zoning hearing board denying Moyer's application for a zoning permit and we remand the record with direction that the zoning permit as applied for be issued.

ORDER

AND Now, this 14th day of September, 1982, the order of the court of common pleas dated June 23, 1981, insofar as it excludes from the costs chargeable to the petitioner those for the township and zoning hearing board solicitors and the township's consulting

engineer, is affirmed; the said order insofar as it affirms the decision of the zoning hearing board upholding the denial of the zoning permit sought by the petitioner is reversed; and the record is remanded with direction to the zoning authorities of Lower Providence Township to issue the zoning permit.

Judge MACPHAIL concurs in the result only.