## Keystone Sanitation Co., Inc. v. Union Township

*Albert G. Blakey,* III, for plaintiff.
*James T. Yingst,* for defendant.

SPICER, *P.J.*, November 6, 1984—Keystone Sanitation Co., Inc. (Keystone) operates a sanitary landfill in Union Township. The township enacted Ordinance 1984-A on April 30, 1984, by which it sought to impose regulations on the landfill operations and require Keystone to obtain a license from the township. Keystone filed this action in equity on May 10, 1984, and sought a preliminary injunction restraining the enforcement of the ordinance.

A hearing was conducted on May 15, 1984. The township agreed to refrain from enforcing the ordinance pending a resolution of the legal issues involved in the case. Keystone agreed to apply for a license. Both parties agreed with this court's decision to treat the action as involving a request for a declaratory judgment. Following this, briefs were filed and argument occurred. The case is now ready for decision.

The court will follow Equity Rule 1517 for the remainder of this adjudication because declaratory judgment proceedings are subject to Equity Rules. Pa.R.C.P. 1601.

## THE ISSUES

Issues raised and argued include the following:

(1) Whether the Solid Waste Management Act, Act 97 of 1980, 35 P.S. §6018.101 et seq. and the rules and regulations adopted pursuant thereto preempt Union Township's ordinance?

(2) Whether the Union Township ordinance is unconstitutionally arbitrary and not reasonably related to the health, safety, and welfare of the community?

(3) Whether Union Township's ordinance is beyond the scope of authority granted to the township

by the Second Class Township Code, Act of May 1, 1933, P.L. 103, art. I, §101; 53 P.S. §65101 et seq. as amended?

(4) Whether Union Township's ordinance is an attempt to regulate land use without the statutory safeguards essential to zoning?

## THE FACTS

The facts involved in this case are undisputed. Keystone has operated its landfill on a 67.69 acre tract in the township for a number of years. Ordinance 1984-A attempts to impose several different types of requirements in the operation. The operator must obtain a license for which there must be paid a processing fee of $100 and a license fee of $1,500 per year. Liability insurance in the amount of $1,000,000 must be maintained.

Some regulations appear based upon aesthetic or environmental considerations. The ordinance prohibits dumping, depositing, storage, or treatment of refuse within 200 feet of any public road or property line. The township supervisors may require reasonable screening as they might decide "from time to time."

Other requirements concern information. For example, regulation C in Section X requires that the operator maintain a register in which is identified persons dumping, the types of materials dumped, times, and the license number of the vehicle. Regulation K requires the licensee to inform the supervisors of any seepage or contamination.

There are regulations which affect the manner in which the landfill is operated. For example, regulation G requires the licensee to cover refuse each day. Regulation D sets the hours of operation and B and E impose security requirements.

## DISCUSSIONS OF LAW AND CONCLUSIONS

The issues make clear that Keystone attacks this ordinance on several theories. However, the first and most serious attack is based upon preemption by the Commonwealth.

Preemption has been discussed by many decisions and in several law review articles. Examples of the latter are Lavelle, Mixing Apples and Oranges: City of Pittsburgh v. Allegheny Bank, 42 U. Pitt. L. Rev. 961 (1981); and Dalzell, The State Preemption Doctrine: Lessons From the Pennsylvania Experience, 33 U. Pitt. L. Rev. 205, (1971). An example of the former is this court's opinion in Davies Used Auto Parts, et al. v. Mt. Joy Township, 18 D. & C.3d 467, 24 (1982), reversed on other grounds,     Pa. Commw.     , 472 A.2d 1172 (1984). In Davies, the court discussed principles of preemption that emerge from such cases as Western Pennsylvania Restaurant Association v. Pittsburgh, 366 Pa. 374, 77 A.2d 616 (1951) and Holland Enterprises, Inc. v. Joka, 64 Pa. Commw. 129, 439 A.2d 876 (1982). These principles, which appear simple enough, can be summarized as follows:

1. The question of preemption is a matter of legislative intent.

2. Statutes which expressly provide that state regulations preempt local action or that local authorities may continue to act obviously pose no problems.

3. Problems arise in the third area in which the legislature has not spoken. If a statute is silent on the subject, courts must determine legislative intent by considering the following:

A: whether a conflict or inconsistency occurs between state and local regulations, or

B: whether local regulations can aid and further the goals of the statute, and

C: in evaluating these alternatives, the effect of local regulations on the state's regulations are considered, not the effect of local regulations on the subject of regulation.

Generally, courts have sustained zoning and setback ordinances which affect landfills but which do not attempt to regulate the very activity already subject to state regulations. For example, a setback requirement was validated in Sunny Farm Ltd. v. North Cordorus Twp., Pa. Commw. , 474, A.2d 56 (1984). Restricting landfills to those operated by municipalities also was approved in Kavanagh v. London Grove Township Twp., 33 Pa. Commw. 420, 382 A.2d 148, (1978), affirmed by equally divided court, 486 Pa. 133, 404 A.2d 393 (1979). Kavanagh involved a zoning ordinance. Even though not preempted, these ordinances may be subject to attack on general zoning principles. See, Moyer's Landfill, Inc. v. Zoning Hearing Board of Lower Providence Twp., 69 Pa. Commw. 47, 450 A.2d 273 (1982).

Courts usually find preemption when there is an attempt to duplicate state regulations or to impose additional regulations in areas subject to comprehensive state regulations. Although it has been suggested that a syllogistic analysis should be applied,[1]

---

1. In discussing City of Pittsburgh v. Allegheny Valley Bank, 488 Pa. 544, 412 A.2d 1366 (1980), Lavelle, supra, page 974 expresses the syllogism as follows:

(1) The state has enacted a statewide scheme to regulate banking institutions.

(2) This tax impairs the Commonwealth's ability to regulate these institutions.

Therefore, this impinges upon a preempted area and cannot stand.

the usual treatment is to determine if there is comprehensive state regulation. If there is, the usual conclusion is there has been preemption. For example, Lavelle, supra, states: "Similarly, a municipal ordinance regulating meat packaging for example, would presumably be preempted by state regulation of the same subject." (page 973) See also, Commonwealth ex rel. Allegheny County v. Shenot, 207 Pa. Super. 351, 218 A.2d 76 (1966) and, more pertinently, Greater Greensburg Sewage Authority v. Hempfield Twp., 5 Pa. Commw. 495, 291 A.2d 318 (1972).

Doubtlessly, the analysis of a court reaching a conclusion such as that rendered in Greater Greensburg, supra, is more searching than the opinion might indicate. Nonetheless, the conclusion to be drawn appears to be that preemption occurs when the Commonwealth imposes extensive regulations and a municipality cannot duplicate, enlarge upon, or vary those regulations.

Lavelle, supra, suggests there may be a difference between legislative intent and legislative purpose. It would seem to this court that the act clearly sets forth its legislative purposes and the question of legislative intent revolves around how those purposes are to be effectuated. A purpose of requiring permits for such activities as residual waste processing and disposal system is stated in Section 6018.102(3). Residual waste is defined in Section 6018.103 as including "garbage, refuse, other discarded material or other waste."

The act directs comprehensive regulation of waste transportation and disposal by The Department of Environmental Resources, Sections 6018.301 and .303. An indication that such regulation is to be exclusive can be gleaned from the re-

quirement that even municipalities obtain state licenses.

The Commonwealth Court dealt with identical language, albeit contained in a repealed forerunner of the act, in Greater Greensburg, supra. That court held invalid an ordinance requiring local permits for sludge disposal.

Although we feel this decision is dispositive of the validity of the local licensing requirement, we are aware that the opinion technically dealt with a repealed statute. The legislature cannot be assumed to have engrafted the interpretations onto the statute by reenacting the same language because the Commonwealth Court is not a court of last resort. See 1 Pa. C.S. § 1922(4). Still, an appellate court has dealt with the precise issue involved in this case and it is binding on us.

The extent of the holding is an area which requires further inquiry. The precise holding was that limited preemption had occurred and a licensing requirement was invalid. However, the basis for the holding was extensive state regulation.

We might ask, in continuing our inquiry, why the legislature might have wanted to preempt local action seeking to regulate landfills.[2] It is widely recognized that local action is usually locally focused. State regulation proceeds from more balanced considerations. Few township residents would want their neighborhood used as a disposal for wastes from several counties or possibly several states.

---

2. This court refers to regulations designed to control the activity, not regulations based upon zoning and aesthetic concepts. Unlike its total preemption of all ordinances in toxic waste disposal situations, Section 6018.105(h), the legislature has indicated no intention to exempt landfills from zoning, setback, and screening regulations.

John Callenbach, Adams County Planner, has said that every landfill is a lulu. (locally unwanted land use)

Ordinances and regulations enacted by any municipality could be enforced to discourage or terminate landfill use. Any agency or government by necessity has a great deal of discretion in the enforcement and interpretation of laws and regulations. It would appear to this court that the legislature has intended that this discretion be placed in the hands of a state agency. The Department of Environmental Resources, and not in the hands of local government.

Focusing on this particular ordinance, we try to distinguish between those provisions which duplicate or expand state regulations and those which do not. The distinction is based upon the thrust of those regulations. For example, requiring that trash be covered daily attempts to control the manner of operation. Setback requirements do not. Until the Department of Environmental Resources regulates the dispersal of information we think Union Township can legitimately require that information be provided the township.

We do not think the other issues raised by Keystone require very much discussion. Courts have historically given short shrift to such arguments except those based upon a demonstrated lack of a reasonable relationship between local action and a public need. For example, the Commonwealth Court in Joka, supra, struck down a bond requirement because state regulations made a bond unnecessary.

Setback requirements do not need to be enacted in a zoning ordinance. See the Commonwealth opinion in Mt. Joy Township, supra.

Based upon this analysis, we enter the following conclusions of law.

1. The following sections are invalid because of preemption: V, VI, VII, VIII, IX, X A, B, D, E, F, G, I, N, and O.

2. Section XII is invalid because of preemption and a lack of a reasonable relationship between the requirement and a public need.

3. The remaining provisions are declared to be valid.

We note that regulation A which requires screening is determined to be valid. Keystone has not specifically attacked this section and it would appear inappropriate to determine the matter facially, without a specific fact situation before us.

## DECREE NISI

And now, this November 6, 1984, the court declares invalid those provisions of Ordinance 1984-A specified in Conclusions 1 and 2 and all other provisions valid. This decree is entered nisi this date and will be confirmed absolute if no exceptions are filed within ten days of this date.