Municipality of Monroeville, Appellant *v.* Chambers Development Corporation, a Corporation, Appellee.

Argued March 12, 1985, before Judges CRAIG and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*Gary F. Zolyak,* with him, *John D. Finnegan,* Municipal Attorney, for appellant.

*John H. Bingler, Jr.,* with him, *Kevin C. Abbott, Thorp, Reed & Armstrong,* for appellee.

OPINION BY JUDGE CRAIG, April 18, 1985:

The Municipality of Monroeville appeals from a decree of the Court of Common Pleas of Allegheny County, which permanently enjoined Monroeville's enforcement of its ordinance regulating the days and hours of operation for sanitary landfills. The sole issue for our determination is whether the trial court properly concluded that, through the Solid Waste Management Act,[1] the state had preempted the regulation of landfill operations.

The facts, which are not in dispute, indicate that Chambers Development Company operates the only landfill within Monroeville. The landfill has existed for at least forty years, and Chambers' current operation is in conformance with Monroeville's zoning ordinance and pursuant to current licenses and permits of the Department of Environmental Resources and Allegheny County Health Department.

Chambers is a regional landfill, currently serving thirty-two municipalities, including the City of Pittsburgh, many public institutions, and private businesses. Pursuant to its contracts and safety and traffic concerns, Chambers and others collect solid waste after the regular business day, that is between 6:00 p.m. and 6:00 a.m., and therefore Chambers has con-

---

[1] Act of July 7, 1980, P.L. 380, 35 P.S. §§6018.101-6018.1003.

tinued the operation of the landfill itself during those later hours.

On August 9, 1983, Monroeville enacted Ordinance 1379, which totally prohibits any activity at sanitary landfills between 6:00 p.m. and 6:00 a.m. every day and all day on Sundays and holidays.[2] The prohibition does not relate to the collection activity.

Chambers sought to enjoin the enforcement of the ordinance and, after a hearing, the trial court issued a preliminary injunction. After a second hearing, the trial court permanently enjoined the enforcement of Ordinance 1379.

Monroeville's primary contention is that the trial court erred in concluding that the state had preempted the field of solid waste management so as to prohibit local regulation of the hours and days of operation. In support of its position, Monroeville notes that the Act contains no specific provision which preempts local regulation of operations, and also cites section 202 of the Act, 35 P.S. §6018.202, which defines the powers and duties of municipalities. That section provides, in pertinent part:

(a) Each municipality shall be responsible for the collection, transportation, processing,

2 The ordinance provides:
Section 1. Prohibition. The following shall be prohibited in the entire Municipality of Monroeville as follows:

(B) The operation of sanitary landfills as recognized by the Pennsylvania Department of Environmental Resources and the Municipality of Monroeville shall be prohibited between the hours of 6:00 p.m. and 6:00 a.m. prevailing time every day, and shall be prohibited absolutely on New Year's Day, Memorial Day, July 4th, Labor Day, Thanksgiving Day and Christmas Day, Easter Sunday and all Sundays. This prohibition shall prevent any and all activity within the boundaries of any sanitary landfill during the prohibited periods.

and disposal of municipal waste which is generated or present within its boundaries. . . .

(b) In carrying out its responsibilities, any such municipality may adopt ordinances . . . for the storage and collection of municipal wastes which shall not be less stringent than, and not in violation of, the rules, regulations, standards, and procedures of the department. . . .

Our Supreme Court, addressing the question of whether the state, by enactment of a statute, had prevented local regulation of the same field, stated that "we will refrain from striking down the local ordinance unless the Commonwealth has explicitly claimed the authority itself, or unless there is such actual, material conflict between the state and local powers that only by striking down the local power can the power of the wider constituency be protected." *United Tavern Owners of Philadelphia v. Philadelphia School District*, 441 Pa. 274, 280, 272 A.2d 868, 871 (1971). Where "the general tenor of the statute indicates an intention on the part of the legislature that it should not be supplemented by municipal bodies, that intention must be given effect and the attempted local legislation held invalid." *Western Pennsylvania Restaurant Association v. Pittsburgh*, 366 Pa. 374, 381, 77 A.2d 616, 620 (1951).

Applying that standard, this court has concluded that the predecessor of the present Solid Waste Management Act[3] did not preempt local zoning ordinances regulating the location and ownership of a proposed landfill.[4] As the court stated in *Greene Township v.*

---

[3] The former act was the Pennsylvania Solid Waste Management Act, Act of July 31, 1968, P.L. 788, *as amended*, 35 P.S. §§6001-6017.

[4] *Kuhl v. Commonwealth*, 78 Pa. Commonwealth Ct. 328, 467 A. 2d 912 (1983) (zoning ordinance regulating location of new land-

*Kuhl,* 32 Pa. Commonwealth Ct. 592, 594-95, 379 A.2d 1383, 1385 (1977), "[w]e cannot find anywhere in the Act a clear intent by the legislature to pre-empt the field of local zoning regulations." Also under the former Act, this court concluded that the state did not preempt a local ordinance requiring a bond for the installation of an on-site sewage disposal system. *Holland Enterprises, Inc. v. Joka,* 64 Pa. Commonwealth Ct. 129, 439 A.2d 876 (1982).

However, in *Greater Greensburg Sewage Authority v. Hempfield Township,* 5 Pa. Commonwealth Ct. 495, 501, 291 A.2d 318, 321 (1972), this court held that the former act did effect a "limited preemption of the field of regulation of sewage facility *operations,* including the disposal of 'sludge' from such operations." (Emphasis added.)

After the passage of the current Solid Waste Management Act, this court has continued to hold that, with respect to the location of landfill sites, the new Act does not preempt local zoning regulations. In *Moyer's Landfill, Inc. v. Zoning Hearing Board of Lower Providence Township,* 69 Pa. Commonwealth Ct. 47, 450 A.2d 273 (1982), the court (in a footnote) rejected the contention that both Acts wholly preempted the subject of solid waste management and therefore prevented the application of a local zoning ordinance to prohibit the expansion of a present, lawful landfill into an area zoned for industrial use.

The court's most recent consideration of the preemption question, *Sunny Farms, Ltd. v. North*

fill not preempted) ; *Kavanagh v. London Grove Township,* 33 Pa. Commonwealth Ct. 420, 382 A.2d 148 (1978), *aff'd per curiam,* 486 Pa. 133, 404 A.2d 393 (1979) (equally divided court), *appeal dismissed,* 444 U.S. 1041 (1980) (zoning ordinance allowing only publicly-owned landfills not preempted) ; *Greene Township v. Kuhl,* 32 Pa. Commonwealth Ct. 592, 379 A.2d 1383 (1977) (zoning requirement of local permit for location of new landfill not preempted).

*Codorus Township,* 81 Pa. Commonwealth Ct. 371, 474 A.2d 56 (1984), involved a zoning ordinance requiring a buffer zone around a proposed hazardous waste disposal facility. We there noted (1) the presumption that the legislature knew the court's construction of the former act when it drafted the new legislation and (2) the specific provision of section 105(h) of the Act, 35 P.S. §6018.105(h), that a state certificate of public necessity supersedes local prohibition of hazardous waste facilities; therefore, we concluded that the local ordinance's mandate of a buffer zone was not ousted by preemption.

However, Monroeville's ordinance presents an issue which is qualitatively different from the question of regulating the physical location of a proposed landfill. Here the municipality seeks to regulate not the physical configuration of the site, nor the land use, but the hours and days of the landfill operation.

Examination of the statute reveals the legislature's intent to "establish and maintain a cooperative State and local program of planning and technical and financial assistance for comprehensive solid waste management." Section 102(1), 35 P.S. §6018.102(1). In order to further that policy, the Department of Health has the power and duty to "develop a Statewide solid waste management plan in cooperation with local governments . . . ; emphasis shall be given to areawide planning." Section 104(3), 35 P.S. §6018.104(3).

As quoted above, the Act does specifically permit a municipality, in furtherance of its responsibilities for management of solid waste "within its boundaries", to adopt ordinances "for the *storage* and *collection* of municipal wastes." Section 202, 35 P.S. §6018.202 (emphasis added).

The Act defines "storage" as "containment of any waste on a temporary basis in such a manner as not

to constitute disposal'', and defines "disposal" as the "deposition . . . of solid waste into or on the land." Section 103, 35 P.S. §6018.103.[5] Webster's Third New International Dictionary 444 (1966) defines "collection" as "the act of collecting" and "collect" as "gather." Thus, neither "storage" nor "collection" encompass the subject of the hours and days of the operation of the landfill itself. Moreover, the landfill operation clearly falls within the legislative definition of "disposal," which is expressly excluded from the concept of "storage."

Given the legislature's specific, detailed provision that municipalities may regulate the "storage" and "collection" of solid waste, the exclusion of "disposal" from the definition of "storage", and the obvious omission of any other permitted areas, we conclude that the legislature did not intend municipalities to have the power to regulate any aspects of the *operation* of a sanitary landfill.

That decision is consistent with our holding in *Greater Greensburg,* 5 Pa. Commonwealth Ct. 495, 291 A.2d 318 (1972), where we concluded that the former Act preempted a local attempt to regulate the operation of sewage facilities, and, as we noted in *Sunny Farms,* 82 Pa. Commonwealth Ct. 371, 474 A.2d 56 (1984), the legislature is presumed to know the construction the courts have afforded current legislation when it enacts replacement legislation.

Furthermore, our conclusion is reinforced by the fact that, in accordance with the legislature's em-

---

[5] Section 103 defines "disposal" in full as:

The incineration, deposition, injection, dumping, spilling, leaking, or placing of solid waste into or on the land or water in a manner that the solid waste or a constituent of the solid waste enters the environment, is emitted into the air or is discharged to the waters of the Commonwealth.

phasis on regional planning, Chambers' landfill receives solid waste from many other municipalities in addition to Monroeville. The fortuity that the landfill happens to exist within the boundaries of Monroeville should not function to permit that municipality to regulate the operation of a regional facility.

Accordingly, we affirm.

### ORDER

Now, April 18, 1985, the order of the Court of Common Pleas of Allegheny County, No. GD 83-13521, dated December 8, 1983, is affirmed.

Senior Judge KALISH dissents.