## Haines & Kibblehouse Inc. v. Silver Hill Association

*Paul R. Ober,* for plaintiff.
*Paul D. Essig,* for defendants.

PEREZOUS, *J.,* June 4, 1991—In this case plaintiff has instituted suit in a 100-plus-paragraph complaint for "malicious interference with contract" against a citizens' group, the Silver Hill Association for Protecting the Environment, by three individuals and a corporation as trustees ad litem, 50 sui juris individuals (listed alphabetically), the same corporation as a named defendant, as well as Jane Doe(s) and John Doe(s), current address unknown. As of

this time discontinuances have been filed for seven of the named individual defendants. Preliminary objections in the nature of demurrers, motions to strike and motions for more specific pleading have been filed and legal briefs submitted in behalf of the parties.

It appears that the main thrust of plaintiff's cause of action involves the purported interference with an agreement to settle five outstanding lawsuits being litigated with Brecknock Township.[1] This settlement proposed declaring the entire 130 acres owned by plaintiff as a lawful non-conforming use, thereby permitting asphalt operations.

The township supervisors approved the compromise and settlement agreement at a meeting on November 28, 1989 by a vote of two to one.[2] At this meeting SHAPE presented a petition bearing 140 signatures opposing the proposed settlement as being "contrary to the Brecknock Township Comprehensive Plan, the Lancaster County Plan and the nature and extent of the use of the property which existed in 1973 when the township's first zoning ordinance became effective. If the settlement is approved, it would be contrary to the public health, safety and welfare." The present litigation is apparently aimed at those signers who are also members of SHAPE.

Subsequently, on December 20, 1989, SHAPE, Bakkers Inc. and three individuals filed a "land use appeal" to no. 5258-1989 in this court alleging, inter alia, Sunshine Act violations. Thereafter at a meet-

---

1. The legal briefs of the parties, while helpful, are not in conformity with Local Rule 31-E in that they do not contain a history of the case; consequently, these facts are gleaned from the pleadings and the argument portions of the briefs.

2. One of the supervisors in the majority was a "lame duck" having been defeated in the general election approximately three weeks earlier.

ing on January 2, 1990, the prior resolution adopted on November 28, 1989, was rescinded unanimously by the two[3] township supervisors present.

Furthermore, this court is aware of its own order dated November 29, 1989 declining to endorse the compromise and settlement agreement between plaintiff and the township due to the attendant circumstances of the case, including the public interest and the inconsistent positions taken by Brecknock Township in other matters involving the operation of Silver Hill Quarry by Haines & Kibblehouse Inc., and therefore takes judicial notice thereof.[4]

Plaintiff avers that defendants filed their land use appeal frivolously to undermine its compromise and settlement agreement with the Township of Brecknock and induced the township to breach such agreement, acting in an outrageous manner. As damages, plaintiff claims actual damages for payments made to the township for inspection ($2,000 annually) and legal fees ($10,000), as well as its attorney fees and punitive damages in excess of $5 million.[5]

---

3. The dissenting supervisor in the prior vote, who had signed the petition of SHAPE, was joined by the newly elected supervisor, who is a member of SHAPE. The remaining supervisor, who had voted in favor of the previous resolution, was not present.

4. On February 5, 1990 the Commonwealth Court quashed as interlocutory appeals from this order and also from the granting of a rule to show cause why intervention should not be permitted by SHAPE.

5. The inclusion of a specific amount over the arbitration amount in an ad damnum clause is violative of no. 1021(b) of our pleading rules, will be stricken, and is condemned since its only purpose would be for publicity and intimidation. *Archibald v. General Construction Assoc. Inc.*, 7 D.&C. 3d 427, 436 (1978); cf. *Cahalin v. Rebert*, 10 D.&C. 3d 142, 154 (1979).

Notwithstanding the effect of section 617.3 of the Municipalities Planning Code (53 P.S. §10617.3), which governs finances with respect to zoning ordinances on township financial matters, this court is troubled by the proposed payment by plaintiff to Brecknock Township of this $10,000 sum within 30 days after the execution of the agreement and the finality of the court orders terminating litigation and establishing a legal pre-existing non-conforming use for all of plaintiff's land, whichever last occurs, for "subsidization of Brecknock Township's legal fees," since such payment, without further explanation, appears per se to be unrelated to reasonable administrative fees and therefore conveys the impression of impropriety. Cf. *Solebury Township v. Shore,* 30 D.&C. 3d 593 (1983), which disallowed the recovery of costs incurred by a municipality in its role as advocate in opposition to an applicant for a curative amendment to its zoning ordinance.[6]

These types of actions, brought by those who encounter citizen opposition to their projects, are prevalent enough to have acquired an acronym: SLAPPs—strategic lawsuits against public participation. They usually have the discouragement of citizen activism as their motive. However, they also often violate the petition clauses of federal and state constitutions[7] which protect legal attempts to influence governmental action.

---

6. See also, *Moyer's Landfill v. Zoning Hearing Board of Lower Providence Township,* 69 Pa. Commw. 47, 450 A.2d 273 (1982), citing with approval *Borough of Brookhaven v. BP Oil Company,* 48 Pa. Commw. 128, 409 A.2d 494 (1979), and holding that, under the MPC, the fees of neither a township's nor a zoning hearing board's solicitor could be charged as a reasonable administrative expense to those presenting causes for zoning hearing board decisions.

7. Bill of Rights, First Amendment (U.S. Const. amend. I); Declaration of Rights (Pa. Const. art. 1, §20).

232

Although we have serious misgivings whether plaintiff's complaint meets any of the other requirements of a cause of action for intentional interference with a contractual relationship, especially intentional interference proximately causing the harm complained of, there is no doubt that the conduct of defendants was not only reasonably justified but was also constitutionally privileged.[8] Certainly defendants' First Amendment rights to petition the government for redress of grievances or other proper purposes is as inviolate as a newspaper's rights to comment on issues of public concern.

To permit a claim such as plaintiff's to proceed would have an impermissible chilling effect on a right most essential to the maintenance of a free society; namely, the right to petition the government.[9] As stated in *Kennedy* applying the Supreme Court's reasoning in *Eastern Railroad Presidents Conference v. Noerr Motor Freight Inc.,* 365 U.S. 127, 5 L.Ed. 2d 464, 81 S.Ct. 523 (1961):

"This struggle between opposing interest groups for the passage or defeat of proposed legislation is exactly the type of activity protected by the First and 14th Amendments as interpreted by *Noerr.*"

Furthermore, defendants' exercise of the rights granted under the MPC to file their land use appeal from a decision of the Board of Supervisors is a justifiable legal course of action to challenge a perceived wrong committed by the board. Although the record was submitted by the supervisors on

8. *Neish v. Beaver Newspapers Inc.,* 398 Pa. Super. 588, 581 A.2d 619 (1990).

9. Cf. *Kennedy v. Medical Service Assn. of Pa. (No. 2),* 39 D.&C. 2d 45 (1966), where the plaintiffs' attempts to secure the passage of legislation was opposed by the defendants and resulted in the legislature's declining to pass the legislation, causing the legal action for injunctive relief which was dismissed upon demurrer.

March 14, 1990, no further activity has been forthcoming in that case. Consequently, defendants' actions were constitutionally privileged and legally justified, whereas plaintiff's lawsuit alleges no nexus between such conduct and the failure of plaintiff's plans for its property.

Hence, in view of this rationale, we find plaintiff's complaint fatally demurrable and enter an appropriate disposition, as follows:

### ORDER

And now, June 4, 1991, in consideration of the rationale in the attached opinion, defendants' demurrers are sustained and plaintiff's complaint is dismissed, with prejudice, at the cost of plaintiff.