531 A.2d 49

Township of Plymouth, Appellant *v.* County of Montgomery, Appellee.

Township of Plymouth, Appellant *v.* County of Montgomery, Appellee.

Argued June 10, 1987, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE and BARRY.

*Stephen M. Feldman,* with him, *Arthur Lefkoe,* for appellant.

*Bruce W. Kauffman,* with him, *Sheryl L. Auerbach, Barbara Anisko, James J. Greenfield, Dilworth, Paxson, Kalish & Kauffman,* for appellee.

*Frederic M. Wentz,* with him, *Bruce J. Eckel,* Montgomery County Solicitor's Office, for appellee.

OPINION BY JUDGE CRAIG, September 8, 1987:

In this case, where a proposed county refuse disposal plant faces prohibition by township enactments, we

must recognize statutory and judicial distinctions between ordinance provisions governing *where* the location of the facility may be (zoning provisions) and, on the other hand, *how* it may be technically designed and operated (operational regulations).

Such an analysis, mindful of a meaningful classification of local enactments, is necessary to resolve this case's two chief issues:

1. Did the trial court, in an equity and declaratory judgment proceeding, have subject matter jurisdiction to decide ordinance validity questions without requiring the county first to exhaust administrative remedies for the invalidation of zoning provisions under the Pennsylvania Municipalities Planning Act (MPC)?[1]

2. Has the Solid Waste Management Act[2] preempted the township's power to enact and enforce both the operational regulations and the zoning provisions on which it seeks to rely?

## The Proceedings

In the Court of Common Pleas of Montgomery County, Plymouth Township simultaneously filed declaratory judgment and equity actions against Montgomery County, seeking a declaration that the county's proposed 1200-ton-per-day resource recovery facility, a trash-to-steam refuse disposal plant, would violate township ordinances, and also seeking an injunction to bar the county from further action to effectuate that project.

---

[1] Act of July 31, 1968, P.L. 805, *as amended,* §1004, 53 P.S. 11004.

[2] Act of July 7, 1980, P.L. 380, §§101-1003, 35 P.S. §§6018.101-6018.1003.

After Judge CORSO denied the township's request for a temporary restraining order, the county responded to the complaints and, in the equity action, by counterclaim sought to have the court invalidate the ordinances and enjoin the township from blocking construction and operation of the proposed plant.

Following the court's rejection of the township's preliminary objections to the counterclaim, the parties stipulated to the consolidation of the two cases and agreed to an initial trial phase limited to evidence pertinent to the issues of jurisdiction and preemption.

After a thorough hearing, the trial judge, Judge BUCHER, issued an adjudication in which he adopted numerous detailed findings of fact and conclusions of law, pursuant to which he ruled the questioned ordinance provisions to be unenforceable with respect to the county's proposed plant. He granted the county's counterclaim by enjoining the township from taking any action against the county's project other than comments and objections to the Department of Environmental Resources (DER) and the Environmental Hearing Board. He confirmed that decision following post-trial motions.

Following the township's appeals to this court, the county sought the application of extraordinary jurisdiction by the Supreme Court, which remanded the case to this court for expedited disposition.

## *Facts*

This court, after reviewing the record, discerns no abuse of discretion by the trial judge with respect to the findings of fact, in that the record contains substantial evidence supporting all of them. Reference to specific findings will follow, as pertinent.

A condensed chronology of events, drawn from those findings, can provide the factual background for analysis. In October, 1982, the township, by resolution, au-

thorized the county to develop a countywide waste management plan under the SWMA. After the county, in 1983 and 1984, in consultation with the municipalities, considered the establishment of an 1800-ton-per-day plant in the township for the district in which the township was located, a Montgomery County Solid Waste Management Committee, on which the township was represented, proceeded in 1985 to prepare a request for proposals (RFP) for a 1200-ton-per-day plant to be located on county-owned property in the township. In February of that year, a letter of the township solicitor indicated that there would be "no problem" with that size of plant.

On April 15, 1985, the township adopted an amendment to its zoning ordinance, establishing a 121-acre resource recovery district and allowing a plant of 1200-ton (throughput) capacity, with height maximum at 165 feet.

However, after the development of community opposition to such a plant in the township, the township council proceeded on April 29, 1985 to repeal that zoning amendment, only two weeks after its enactment. Although the stated reason for the repeal was inadequate advertising, the township did not attempt to readvertise it.

After the county had issued the RFP for the 1200-ton facility on May 7, 1985, the township council issued a public declaration on May 29 that they were "unanimously opposed" to any type of solid waste disposal facility within the township.

Thereafter, in connection with township deliberations, the township solicitor advised the council that "limitation of tonnage for trash transfer stations" could be illegal, and also that this court had decided that zoning could not be used to regulate the method of operation of a landfill or trash transfer station.

On July 8, 1985, the township passed the three ordinances chiefly at issue here, Nos. 934, 936 and 937.

In December, 1985, the county completed and adopted its Municipal Waste Management Plan calling for development of the 1200-ton facility within the district designated by the township for a resource recovery facility. After DER issued preliminary approval of the plan, the county entered into contracts with private companies to construct and operate the plant in question. Seventeen of the twenty-four municipalities in the district have contracted with the county to take their municipal waste for disposal at the plant. The County Industrial Development Authority has also issued bonds to finance the construction costs.

While the DER approval process was underway in 1986, the township advised the county that the township regarded the proposed facility as "illegal" and that the township would not issue a permit for it unless a court invalidated the township ordinances.

This litigation followed.

## Provisions of the Ordinances

Ordinance No. 934, the Solid Waste Management Ordinance, is not part of the township's Zoning Ordinance. It regulates the processing and disposal of waste by requiring operators to obtain permits, pay permit application fees up to $100,000 and pay user fees of $.50 per ton for waste processed. That ordinance also regulates the disposal of waste at the facility, and the transportation of waste with respect to details of routing and route cleaning, vector control, vehicle size and emergency operational plans.

Ordinance No. 936, a zoning ordinance amendment, reestablishes the district regulations for the resource recovery district. It sets the maximum height of

buildings, exclusive of stacks, at 40 feet, as compared to the maximum of 165 feet in the repealed resource recovery district regulations, and as compared to maximum height limitations of 100 to 200 feet in adjacent areas zoned for industry. This ordinance lists a resource recovery facility—*i.e.*, a refuse disposal plant—as allowable only by conditional use approval granted by the township council. One of the conditional use standards limits a resource recovery facility to a design capacity not greater than 250 tons per day, as compared to the 1200-ton daily capacity allowable under the repealed version of the resource recovery district regulations.

Ordinance No. 937 amended the zoning map to describe the resource recovery district as being 36.3 acres in area, instead of the 121 acres previously allowed, and as including only 10 acres of the county-owned 70 acres.

In addition to the foregoing ordinances, Judge BUCHER's adjudication also refers to Ordinance No. 837, subdivision and land development regulations under the MPC; section 5 of the township's Code, requiring a building permit; section 10 of the township's Code, subjecting the proposed facility to air pollution control approval; and section 23 of the township's Code, requiring a permit for connection of the facility to the East Norriton-Plymouth Joint Sewer Authority line. Although the findings of fact contain no reference to these provisions, Judge BUCHER's opinion also declared them to be invalid as applied to the county's proposed plan.

## *Jurisdiction*

As Judge BUCHER correctly decided, the trial court had subject matter jurisdiction in these equity and declaratory judgment actions to adjudicate all of the issues which the parties presented. Only the township has attacked the court's jurisdiction and, of course, only with respect to the county's counterclaim; equity juris-

diction with respect to the township's initial action to enjoin an alleged threatened violation of its zoning is expressly confirmed by section 617 of the MPC, 53 P.S. §10617.

In analyzing the jurisdictional question, the distinction between the operational regulations and the zoning provisions immediately becomes useful.

With respect to the operational regulations at issue, consisting of the solid waste management ordinance, No 934 and the operational provisions of Ordinance No. 936, regulating how the refuse disposal plant should be technically designed and conducted with respect to capacity and other specifications, a need to exhaust zoning remedies under the MPC is clearly not present. Without any question concerning resort to zoning procedures, the courts have reviewed and negated municipal solid waste operational regulations in *Crown Wrecking Co., Inc. v. Township of Ross,* 93 Pa. Commonwealth Ct. 268, 500 A.2d 1293 (1985) (ordinance regulating the operation of landfills and the transportation of wastes), and *Municipality of Monroeville v. Chambers Development Corporation,* 88 Pa. Commonwealth Ct. 603, 491 A.2d 307 (1985) (regulating landfills as to times of operation).

In the latter case, this court made clear that the regulation of waste disposal operations "presents an issue which is qualitatively different from the question of regulating the physical location of a proposed landfill." We noted that the municipality sought to regulate the hours and days of the landfill operation, "not the physical configuration of the site, nor the land use. . . ." 88 Pa. Commonwealth Ct. at 608, 491 A.2d at 310. In other words, the operational regulations did not fall within the category of the land use controls accomplished by zoning, under the MPC.

Consistently, Judge BUCHER here held, and we agree, that zoning administration procedures could not provide relief with respect to the operational regulations on which the township here relies; the insufficiency of the administrative remedy confirms the propriety of trial court's initial jurisdiction. *Feingold v. Bell Telephone Co. of Pennsylvania,* 477 Pa. 1, 6, 383 A.2d 791, 793 (1977).

With the common pleas court initial jurisdiction being thus clearly appropriate for the operational regulations, there is no doubt that, in a case such as this one, zoning provisions—which the township has inextricably connected with the operational regulations—are, and should be, also cognizable in the same jurisdiction for adjudication. When the public welfare calls for the simultaneous adjudication of zoning provisions along with other matters, as where ordinance provisions and public contracts and projects are interrelated as in this case, the administrative process is not adequate and equity jurisdiction is appropriate to achieve a prompt and unified resolution. *Duquesne Light Co. v. Upper St. Clair Township,* 377 Pa. 323, 105 A.2d 287 (1954) (zoning questions affecting transmission line construction project, cognizable in equity). Also pertinent is *Gladwyne, Inc. v. Township of Lower Merion,* 409 Pa. 441, 187 A.2d 549 (1963) (zoning issues, related to developer's agreement with township, cognizable in equity). The exhaustion of administrative remedies is not warranted when that process would be unfeasible. *Borough of Green Tree v. Board of Property Assessment,* 459 Pa. 268, 328 A.2d 819 (1974).

Judge BUCHER also correctly determined that equity jurisdiction was appropriate in view of the futility of pursuing township approval in the face of the township's explicit and obdurate opposition, as detailed in the findings of fact, and on the basis of the irreparable harm

facing the county and the public as a consequence of the importance of the project to the general welfare of the larger community. *Duquesne Light.*

Finally, the trial court's jurisdiction was not deficient by reason of the point, newly raised by the township here, that the county's contractor and other municipalities in the district were indispensable parties whom the county has failed to join. Clearly, the presence of those parties is not necessary to the adjudication of the validity of the township's ordinances in relation to the county; certainly, Plymouth Township as a plaintiff did not join those additional parties as defendants whose interests would have to be involved in the case. The possible standing of those defendants to seek intervention on their own motion, to advance any interests shared by them with one of the original parties, does not mean that the presence of those parties is indispensable, of course.

## Preemption of Township's Operational Regulations

Soundly relying upon his review of the SWMA and applicable decisions of this court dealing with the effect of that statute, Judge BUCHER ruled in the trial court here that the pervasive powers conferred by the legislature upon DER with respect to the transportation, processing, treatment and disposal of solid waste, SWMA §§102-202(b), 35 P.S. §§6018.102-6018.202(b), preempted municipal powers to govern those functions by operational regulations. As noted above, the township's operational regulations here purport to require permits for waste processing, regulate the transportation and disposal of the waste, and prescribe limits upon the design, capacity and size of waste disposal facilities. Because municipal power to regulate resource recovery facilities or disposal plants has been preempted just as certainly as local power to regulate waste disposal by means of

landfills, the trial court correctly followed this court's conclusion in *Municipality of Monroeville,* which stated:

> Given the legislature's specific, detailed provision that municipalities may regulate the 'storage' and 'collection' of solid waste, the exclusion of this 'disposal' from the definition of 'storage,' and the obvious omission of any other permitted areas, we conclude that the legislature did not intend municipalities to have the power to regulate any aspects of the operation of a sanitary landfill.

88 Pa. Commonwealth Ct. at 609, 491 A.2d at 311.

Accordingly, the trial judge noted that, "while DER is granted broad powers to promote area-wide planning and to regulate all areas of solid waste management, municipalities are responsible only for implementing their own plan and, in furtherance of this responsibility, may regulate only in the areas of storage and collection." We agree with the trial judge that there is controlling significance in the point that the SWMA recognizes municipal legislation over *waste disposal operations* only in the provision that "any such municipality may adopt ordinances, regulations and standards for the storage and collection of municipal waste. . . ." SWMA §202(b), 35 P.S. §6018.202(b).

Shortly after *Municipality of Monroeville,* this court affirmed the view that the state had preempted the field of operational regulations of waste by adopting the opinion of Judge NARICK, then of the Court of Common Pleas of Allegheny County, in *Crown Wrecking Co.,* which viewed the SWMA as unequivocally excluding the municipalities from the regulation of waste disposal—in that case also by landfill.

Accordingly, Ordinance No. 934, the township's solid waste management ordinance, has no legal effect. Similarly, the operational provisions of Ordinance No.

936, limiting the capacity, design and size of resource recovery facilities, are also of no effect. The township council's power, through the conditional use approval provision, to subject such facilities to operational, design capacity or size conditions is also rendered nugatory by the preemptive effect of the SWMA.

## Preemption as to Township Zoning

Although *Municipality of Monroeville* confirms state preemption as to waste disposal operational regulations, our opinion also contains clear statements—which should not be overlooked—of this court's repeated conclusion that the present SWMA does *not* preempt local zoning provisions as such. The opinion in *Municipality of Monroeville* states:

> After the passage of the current Solid Waste Management Act, this court has continued to hold that, with respect to the location of landfill sites, the new Act does not preempt local zoning regulations. In Moyer's Landfill, Inc. v. Zoning Hearing Board of Lower Providence Township, 69 Pa. Commonwealth Ct. 47, 450 A.2d 273 (1982), the court (in a footnote) rejected the contention that both Acts wholly preempted the subject of solid waste management and therefore prevented the application of a local zoning ordinance to prohibit the expansion of a present, lawful landfill into an area zoned for industrial use.
>
> The court's most recent consideration of the preemption question, Sunny Farms, Ltd. v. North Codorus Township, 81 Pa. Commonwealth Ct. 371, 474 A.2d 56 (1984), involved a zoning ordinance requiring a buffer zone around a proposed hazardous waste disposal facility. We

there noted (1) the presumption that the legislature knew the court's construction of the former act when it drafted the new legislation and (2) the specific provision of section 105(h) of the Act, 35 P.S. §6018.105(h), that a state certificate of public necessity supersedes local prohibition of hazardous waste facilities; therefore, we concluded that the local ordinance's mandate of a buffer zone was not ousted by preemption.

88 Pa. Commonwealth Ct. at 607-08, 491 A.2d at 310.[3] Thus, this court has concluded, the internal content of the SWMA quite explicitly recognizes local zoning regulations and indicates that local zoning is not preempted by the enactment of the statute itself nor by administrative implementation of it, short of issuance of a certificate of public necessity by the Environmental Quality Board, which applies only to hazardous waste facilities. Because this case does not involve *hazardous* waste disposal, the record does not indicate that the Environmental Quality Board has issued any such superseding certificate of public necessity here.

However, appropriate additional reference should be made to *Department of General Services v. Ogontz Area Neighbors' Association,* 505 Pa. 614, 483 A.2d 448 (1984), which has been addressed by the briefs of both sides. In *Ogontz,* the opinion (1) frankly recognized the difficulty of distinguishing the contrary results achieved by the "balancing" approach in *Pemberton Appeal,* 434 Pa. 249, 252 A.2d 597 (1969), as compared to *City of Pittsburgh v. Commonwealth,* 468 Pa. 174, 360 A.2d

[3] Section 105(h), above mentioned, reads as follows:
(h) Issuance of a certificate of public necessity under this section shall suspend and supersede any and all local laws which would preclude or prohibit the establishment of a hazardous waste treatment or disposal facility at said site, including zoning ordinances.

607 (1976) *rev'd in part* 505 Pa. 614, 626, 483 A.2d 448, 454 (1984), (2) decried the lack of certainty and predictability inherent in the balancing approach, and (3) called for a return to statutory construction techniques, noting in particular the provision of the Statutory Construction Act, 1 Pa. C. S. §1921(c)(6), that legislative intent may be determined by considering, among other things, the consequences of a particular interpretation. With respect to local zoning powers, the Supreme Court noted that the subordination of local zoning, if uniformly followed, would frustrate local plans in every case where the plan of the Commonwealth (or other agency) conflicted with the city plan. On the other hand, the Supreme Court reasoned that recognition of local zoning powers would not necessarily frustrate a program under state law because "the loss of one location might well be compensated for by substitution of another." 505 Pa. at 628, 483 A.2d at 455.

Although that view, that local zoning and a state program could coexist, permitted the Supreme Court, in *Ogontz,* to uphold the locational decision pattern of the city under its zoning ordinance, the SWMA in this case introduces a complicating factor which must be considered, those provisions of SWMA section 201, 35 P.S. §6018.201, that expressly, and with apparent forethought, contemplate municipal participation, along with other municipalities and the county, in the formulation of comprehensive plans for waste management which will include the land planning decisions affecting location.

That section evinces an orderly and sensible scheme.[4] Municipalities have the initiative in generat-

---

[4] Section 201, of the SWMA, 35 P.S. §6018.201, confers upon municipalities extensive planning powers and duties as to solid waste. Under subsection (b), the municipality must submit to DER an officially adopted plan for a municipal waste management system. The municipality may request the county in which it is located

ing waste management plans and are encouraged to integrate that planning with the land planning programs of their own municipality, adjacent municipalities and the county. Because ready agreement among numerous parties cannot be automatically assured in such joint planning efforts, SWMA section 201 gives DER a referee-like power to approve or disapprove plans overall,

---

to perform that function, or, where more than one municipality is involved, they may act jointly or through action of the county with the concurrence of the affected municipalities. Subsection (d) states that every plan "shall delineate areas where municipal waste management systems are in existence" as well as "areas where the municipal waste management systems are planned to be available within a ten-year period." Legislative intention to keep the municipal zoning power alive with respect to municipal·waste management system planning is indicated by subsection (e)(2), which specifies that:

(e) Every plan shall:

. . . .

(2) take into consideration all aspects of planning, *zoning*, population estimates, engineering and economics so as to delineate with precision those portions of the area which may reasonably be expected to be served by a municipal waste management system within ten years of the submission of a plan. . . . (Emphasis added.)

Subsection (f) expressly contemplates that the plan "shall be reviewed by appropriate official planning agencies within a municipality," as well as area-wide planning agencies and county planning agencies "for consistency with programs of planning if one exists. . . ."

With the statute thus indicating that municipal waste management system plans include, but are not limited to, locational matters affected by zoning and planning, subsection (g) expressly authorizes the department "to approve or disapprove plans for municipal waste management systems" submitted in accordance with the Act. In addition, subsection (h) authorizes DER to approve or disapprove revisions of plans and subsection (1) authorizes the department to order, or obtain injunctions requiring, municipalities to implement the plans which they have submitted.

and the power to enforce them when implementation is necessary.

Under the present record, the township's repealed zoning ordinance apparently was in accordance with a joint plan which has been in process. Even the present zoning map designation in Ordinance No. 637 remains applicable to part, but only part, of the county land which marked the location of the facility as contemplated.

Although the SWMA evinces an intention to recognize local zoning power when it is used in an integrated fashion (and when not superseded by a certificate of public necessity as to hazardous waste disposal), that affirmation of local zoning power provides no guarantee that the revised present zoning approach of the township is specifically valid under the principles governing legal zoning.

### Zoning Ordinance Validity

The trial judge here found the zoning provisions invalid, along with the operational regulations, by reason of preemption. Because our pursuance of the Supreme Court's *Ogontz* principles and our own precedents bars a conclusion that the zoning provisions here are negated by preemption, we turn to consider whether we must nevertheless affirm the trial judge's invalidation of the zoning provisions on other grounds, as we may do if the law so requires. *E. J. McAleer & Co. v. Iceland Products, Inc.*, 475 Pa. 610, 613, n. 4, 381 A.2d 441, 443, n. 4 (1977); *Department of Public Welfare v. Dauphin County Social Services for Children and Youth*, 90 Pa. Commonwealth Ct. 295, 495 A.2d 214, 216 (1985).

Of particular note here is the trial judge's statement, virtually a finding of fact, indicating that the township

did not adopt these zoning provisions for legitimate land. planning purposes. The trial judge said:

> The circumstances surrounding the passage of the ordinances and the limitations which they impose indicate to the court that ordinances No. 934, 936, 937 were designed and enacted by Council to exclude the proposed facility from the Township and to restrict and regulate the operations of any facility that will eventually be constructed.

The trial court took particular note that the council chairperson admitted that the goal was to stop the county resource recovery facility if possible.

So perceived, the unavoidable conclusion is that the zoning provisions in this case are classic examples of spot zoning—zoning provisions adopted to control the use of a specific area of land without regard to the relationship of those land use controls to the overall plan and the general welfare of the community.

Judge COLINS of this court has articulated the true nature of spot zoning in *Pace Resources v. Shrewsbury Township Planning Commission*, 89 Pa. Commonwealth Ct. 468, 492 A.2d 818 (1985), pointing out that, properly understood, it is more than just discriminatory or "island" zoning—the land area involved being only one of the determining factors—in that:

> Futhermore, our Supreme Court has cautioned us that we should not limit our inquiry to the mere physical aspect and characteristics of the land, but we should also consider how the rezoning affects the public health, safety, morals, and general welfare and how it relates to the township's comprehensive plan. Shubach, 461 Pa. at 382-83 n. 14, 336 A.2d at 336 n. 14.

The key point is that when a municipal governing body puts on blinders and confines its vision to just one isolated place or problem within the community, dis-

regarding a community-wide perspective, that body is not engaged in lawful zoning, which necessarily requires that the picture of the whole community be kept in mind while dividing it into compatibly related zones by ordinance enactments. In other words, legislating as to a *spot* is the antithesis of *zoning*, which necessarily functions within a community-wide framework. The MPC's basic zoning authorization, in section 601, 53 P.S. §10601, describes the very purpose of zoning ordinances as being "to implement comprehensive plans and to accomplish any of the purposes of this act." Those purposes, spelled out in section 105 of the MPC, 53 P.S. §10105, include the following:

> To protect and promote safety, health and morals; and ·
>
> To accomplish a coordinated development of municipalities.

Nothing in the MPC mandates the adoption of a specific written master plan or comprehensive plan as a separate document. Those sections 601 and 105, together with the mandate that zoning ordinances contain a statement of community development objectives, MPC §606, 53 P.S. §10606, clearly require that zoning, to be valid, must be in accordance with a rational and well considered approach to promoting safety, health and morals and a coordinated development of the whole municipality. The classic statement of the same principle is in Haar, *In Accordance with a Comprehensive Plan*, 68 Harv. L. Rev. 155 (1955), in which Professor Haar pointed out that the essence of sound zoning—as distinguished from spot zoning—is zoning enacted on a comprehensive and well considered basis.

As against this test, and in light of the trial court's findings of fact, Plymouth Township's purported zoning provisions in this case are not valid under the MPC. Although zoning amendment ordinances 936 and 937 did not technically amend the repealed zoning provisions

which had established a resource recovery district in accordance with the county's waste disposal plan, their actual effect and legal impact is precisely the same as if Nos. 936 and 937 had amended the zoning ordinance to (1) shrink the 121-acre district, embracing all of the county's seventy acres, down to a 36-acre district, (2) impose prohibitive requirements within that shrunken district, and (3) rezone 60 of the county's 70 acres into industrial district classifications not permitting waste disposal facilities at all.

In view of the invalidity of that zoning pattern accomplished by. Ordinances Nos. 936 and 937, those ordinances, as well as Ordinance No. 934, were properly held to be invalid by the trial judge.

## *General Land Development and Building Permit Regulations*

Although Plymouth's air pollution control, section 10 of its Code, logically also falls within the scope of operational matters preempted, nothing in this record and no principles of law support the invalidation of Plymouth Township's Subdivision and Land Development Ordinance No. 837, its building permit requirements under its building code, or its sewer connection procedures (Code §23), even as applied to the county's project. When operational regulations and zoning provisions have been ruled invalid with respect to a particular project or development, our decisions have not held that the project proponent is also free from valid procedural and permit regulations which apply to all development. Classically, the Supreme Court, when invalidating zoning provisions, has mandated that the requested land use shall be allowed, subject to lawful building procedures and regulations of the municipality which are applicable. *See Casey v. Zoning Hearing Board of Warwick Township,* 459 Pa. 219, 328 A.2d 464 (1974).

For example, Subdivision and Land Development Ordinance No. 837 rests upon article V of the MPC,

which empowers municipalities to provide assurance that particular land developments shall be properly incorporated into the overall facilities of the municipality—including its road patterns—in accordance with concerns affecting the health, safety and general welfare.

Plymouth Township doubtless is well aware that the applicability of these general regulations and procedures to the county waste disposal development in no way enables the township to abuse those procedures or use them to effectuate obdurate obstruction. *Raum v. Tredyffrin Township Board of Supervisors,* 29 Pa. Commonwealth Ct. 9, 370 A.2d 777 (1977).

## Relief

The relief to be afforded the county is governed by MPC §1011(2), 53 P.S. §11011(2), as well as by those classic principles of zoning relief in Pennsylvania which are concerned with providing a remedy which is effective but not excessive.

Section 1011(2) provides that, if a court finds development restrictions to be unlawful, the court may "order the described development or use approved as to all elements," or may "order it approved as to some elements and refer other elements to the governing body, agency or officer having jurisdiction. . . ." In this case, that approach calls upon the trial court to bar township interference with the development and operation of the resource recovery facility on the planned site by the county, but with a recognition that the township, in view of its responsibility to citizens and their property outside that site, may apply its established subdivision and land development regulations, and sewer connection requirements, with respect to the physical relationship of the county's site as to the roads, sewers and other land outside it.

## Conclusion

Accordingly, the trial court's order in the declaratory judgment case, on appeal here at No. 3313 C.D. 1986, will be affirmed insofar as it declares and adjudges Plymouth Township Ordinances Nos. 934, 936 and 937 to be invalid and unenforceable, and also adjudges section 10 of the Plymouth Township Code to be unenforceable with respect to the county project involved in this case. That order will be modified to declare that the Solid Waste Management Act has preempted the field as to the regulation of transportation, processing and disposal of municipal waste, but not as to lawful zoning concerning the location thereof; it must be reversed to the extent that it declares sections 5 and 23 of the Plymouth Township Code to be unenforceable.

The trial court's order in the equity case, on appeal here at No. 3312 of 1986, is affirmed as stated, except that the injunction shall also not prevent the lawful application by Plymouth Township to the county and its contractors of the requirements of Plymouth Township Ordinance No. 837 and sections 5 and 23 of the Plymouth Township Code.

Finally, Plymouth Township's motion to reconsider President Judge CRUMLISH's earlier order denying the township's request to remand the case to the trial court for taking additional evidence, will be denied. The township proposed to offer additional evidence on the factual question of whether or not a "trash crisis" exists in the region involved, as that factual point might relate to the matter of preemption. However, as the foregoing analysis illustrates, a conclusion as to preemption turns primarily upon the resolution of a question of law, derived from statutory interpretation.

### ORDER IN 3312 C.D. 1986

NOW, September 8, 1987, the order of the Court of Common Pleas of Montgomery County dated October

29, 1986 affirming and incorporating decree nisi dated August 12, 1986 is hereby affirmed as stated in paragraphs 1 and 2 of the decree nisi, except that Plymouth Township is not enjoined from lawfully applying the requirements of Plymouth Township Ordinance No. 837 and sections 5 and 23 of the Plymouth Township Code to Montgomery County and its contractors with respect to the project involved in this case.

Plymouth Township's motion for reconsideration of this court's order of June 8, 1987, denying the township's motion to remand to the trial court for the taking of additional evidence, is hereby denied.

## ORDER IN 3313 C.D. 1986

Now, September 8, 1987, the order of the Court of Common Pleas of Montgomery County, dated October 29, 1986, affirming and incorporating declaratory judgment order of August 12, 1986, is hereby affirmed insofar as it declares and adjudges Plymouth Township Ordinances Nos. 934, 936 and 937 to be unenforceable by reason of invalidity and also insofar as it declares and adjudges section 10 of the Plymouth Township Code to be unenforceable with respect to the county project involved in this case; the order provisions as to preemption are modified to declare that the Solid Waste Management Act has preempted the field regulating the transportation, processing and disposal of municipal waste, but not as to lawful zoning concerning the location of plants and buildings for such purposes; and the provisions declaring sections 5 and 23 of the Plymouth Township Code to be unenforceable are reversed.

Plymouth Township's motion for reconsideration of this court's order of June 8, 1987, denying the township's motion to remand to the trial court for the taking of additional evidence, is hereby denied.

Judge MACPHAIL concurs in the result only.