# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Golf Enterprises, Inc., | : |
| Appellant | : |
| v. | : |
| Newberry Township Board of | : |
| Supervisors | : |
| v. | : No. 97 C.D. 2016 |
| Valley Green Residents Organization, | : Argued: September 15, 2016 |
| Anthony Miller, Mary Miller, | : |
| LeeAnn Menut, Kenneth Menut, | : |
| William Hendrickson, Edna | : |
| Hendrickson, LeeAnn Pague, | : |
| Edward Pague, Stanley Olejarczyk, | : |
| Nancy Olejarczyk, John Elliott, and | : |
| Amy Elliott | : |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE JULIA K. HEARTHWAY, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  April 25, 2017**

Golf Enterprises, Inc. (GEI) appeals from an order of the Court of Common Pleas of York County (Trial Court) affirming a decision by the Board of Supervisors (Board) of Newberry Township (Township) denying an application for curative amendment of the Township's Zoning Ordinance (Ordinance) filed by GEI.  In the application, GEI sought to change the zoning designation of 100 acres of land it owns in the Township (Property) from the Open Space (OS) district to the Residential Growth (RG) district on the basis that the 2006 rezoning of the

Property as OS was invalid spot zoning and arbitrary and irrational. For the following reasons, we affirm the order of the Trial Court.

The Property comprises 100 acres on which is situated the Valley Green Golf Course, a public course with a clubhouse and restaurant. (Board Decision, Findings of Fact (F.F.) ¶¶2, 3.) The Property is bisected by Valley Green Road and connected to public sewer and water, and the adjacent parcels are mostly residential with some parcels that continue to be used agriculturally. (*Id.*, F.F. ¶¶2, 24, 40.)

Prior to 2006, the OS district did not exist in the Ordinance, and the Property was zoned within the Commercial Recreation (C-3) district, which allowed for recreational uses such as parks, playgrounds, agriculture and forestry and conditional uses such as campgrounds, commercial recreational facilities, golf courses and golf course cluster developments. (*Id.*, F.F. ¶¶15-17; Prior Township Zoning Ordinance §§ 209.1-209.3.) Golf course cluster developments in the C-3 district were required to have a minimum area of 100 acres with at least 60% of the development devoted to open space. (Board Decision, F.F. ¶¶54, 57; Prior Township Zoning Ordinance §§ 422.2, 422.6.) The cluster developments allowed for greater density, reduced minimum lot area and width, increased maximum lot coverage percentage and reduced setback distance compared to other uses in the C-3 district. (Board Decision, F.F. ¶¶55-56; Prior Township Zoning Ordinance §§ 422.4-422.5.)

GEI applied for and received approval for two golf course cluster developments on parcels adjacent to the Property prior to 2006: Townes on the Green, a 30-townhouse condominium development, and Bent Water Crossing, a 406-unit single-family and multi-family development. (Board Decision, F.F. ¶¶

2

53, 58-64.) The Townes on the Green townhouse development sits partly on the Property and therefore within the OS district. (*Id*., F.F. ¶21; June 6, 2013 Hearing Transcript (H.T.) at 32, Reproduced Record (R.R.) 1093a.) Though stormwater easements were placed on the Property as part of the prior land-use plans, no open space or conservation easements, covenants or deed restrictions were placed on the Property during the approval process for the two golf course cluster developments. (Board Decision, F.F. ¶65.) As of the date of the Board decision, no construction had begun on the Bent Water Crossing development and only 15 units had been approved, with none built, at Townes on the Green. (*Id*., F.F. ¶66.)

In 2006, the Ordinance was amended to create the OS district, which provides for by-right uses including agriculture, forestry, nature preserves, hiking or nature trails, open space, educational and scientific uses without structures, parks and picnic areas; golf courses are also included as a conditional use in the OS district. (*Id*., F.F. ¶¶18, 20; Ordinance § 201.2.) In addition to the Property, the only other parcel zoned OS in the district is an adjacent 10-acre parcel to the west of the Property that is not owned by GEI. (Board Decision, F.F. ¶21.)

All of the properties surrounding the OS district are zoned as RG following the 2006 amendments to the Ordinance. (*Id*., F.F. ¶22.) The RG district permits forestry and various single-family and two-family dwellings (attached and unattached), parks, playgrounds and municipal uses by right and multi-family dwellings, schools and houses of worship by special exception. (*Id*., F.F. ¶23; Ordinance § 204.2.) The Ordinance provides that both the RG and OS districts are included within the "designated growth area" of the Township, which is defined as a region "within which residential and mixed use development is permitted or planned for at densities of one unit to the acre or more, commercial, industrial and

institutional uses are permitted or planned for and public infrastructure services are provided or planned." (Board Decision, F.F. ¶26; Ordinance § 114.C.82.) The Property is cited in the Township's 2006 comprehensive plan as an area that the Township seeks to "protect" from development and is designated as part of an "Open Space Overlay District" in the future zoning map. (Board Decision, F.F. ¶¶28-31; Comprehensive Plan: Future Land Use Map, R.R. 195a.) The Property is also located within the Township's growth boundary on the "Growth Phasing and Development Potential Map" in the Township's comprehensive plan and is identified as part of the "Established Primary Growth Area" in York County's Growth Management Map. (Board Decision, F.F. ¶¶32, 35; York County Growth Management Map, R.R. 194a; Comprehensive Plan: Growth Phasing and Development Potential Map, R.R. 196a.)

GEI filed its application for a curative amendment, along with a proposed amendment to the Ordinance and a sketch plan proposing 355 residential units (336 of which were on the Property) on August 8, 2012.[1] (Application, R.R. 489a-513a.) The proposed amendment would amend the zoning map to rezone the Property as RG and amend the Ordinance to include a golf course as a by-right use in the RG district. (*Id*., Ex. E, R.R. 503a-504a.) The application was submitted to the Township Planning Commission, which voted to not recommend approval. (Board Decision, F.F. ¶9; Township Planning Commission Sept. 10, 2012 Minutes, R.R. 514a.) The application was also submitted to the York County Planning Commission, which recommended rezoning the Property and the 10-acre parcel to the west of the Property as RG and removing the OS district from the Ordinance, but did not recommend accepting GEI's proposed change of the Ordinance to

---

[1] GEI filed an initial curative amendment application on August 7, 2012, but amended it the following day.

4

permit golf courses as a by-right use in the RG district. (Board Decision, F.F. ¶10; Oct. 3, 2012 Letter from York County Planning Commission, R.R. 516a-520a.)

Hearings were held by the Board of Supervisors on the application over four days. At the hearings, GEI presented the testimony of a professional land planner, a civil engineer and a traffic engineer. In addition, GEI presented the testimony of the surveyors who prepared the plans for the Townes on the Green and Bent Water Crossing projects. The Township presented the testimony of a member of the Township Planning Commission and the Township's civil engineer. Valley Green Residents Organization, along with 12 neighbors, entered their appearances as objectors at the Board hearings and were joined as parties (Intervenors).[2] Several of these neighbors testified at the hearings and the Intervenors presented the testimony of a civil engineer.

On November 8, 2013, the Board issued its decision denying the application, concluding that GEI had not met its burden of showing that the OS zoning designation of the Property was unreasonable, arbitrary or not substantially related to the Township's police power interest the Ordinance serves. (*Id*., Conclusion of Law (C.L.) ¶31.) The Board concluded that preserving the Property as open space is in harmony and complimentary with surrounding uses, is compatible with the Township's comprehensive plan and is in accordance with the previous golf course cluster development approvals that GEI received prior to the 2006 rezoning. (*Id*., C.L. ¶¶18, 22, 23, 25-30.) The Board distinguished *In re Appeal of Realen Valley Forge Greenes Association*, 838 A.2d 718 (Pa. 2003), a case in which our Supreme Court ruled that the agricultural zoning of a golf course

---

[2] The individual objectors are: Anthony and Mary Miller, LeeAnn and Kenneth Menut, William and Edna Hendrickson, LeAnn and Edward Pague, Stanley and Nancy Olejarczyk, and John and Amy Elliot.

5

surrounded by intensive suburban development was unconstitutional spot zoning, because, unlike in *Realen*, the uses bordering the Property are not highly developed and intensive and are not incompatible with open space. (Board Decision, C.L. ¶¶13-14, 16-19.)

The Board further rejected the argument advanced by GEI that the zoning classification of the Property was arbitrary and irrational because it was not in accordance with the Property's inclusion in the Township's and County's designated growth areas on the grounds that Section 303(c) of the Municipalities Planning Code (MPC)[3] prohibits claims based upon inconsistency with a municipality's comprehensive plan. (Board Decision, C.L. ¶24.) Finally, the Board concluded that GEI had not met the criteria set forth in Section 609.1(c) of the MPC[4] for showing that it was entitled to site-specific relief. (Board Decision, C.L. ¶¶32-36.) In particular, the Board found that GEI's proposed development would not address the regional housing needs, particularly in light of the fact that GEI has already obtained approval for at least 415 housing units that have not yet been built, and that there would be a negative effect on area roads leading to a significant increase of crashes at three intersections because Valley Green Road, the principal road that provides access to the Property, has insufficiently narrow shoulders and road width with no opportunity for expansion. (*Id*., F.F. ¶¶47-52, C.L. ¶¶35-36.) GEI appealed the Board's decision to the Trial Court, which

---

[3] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10303(c) ("[N]o action by the governing body of a municipality shall be invalid nor shall the same be subject to challenge or appeal on the basis that such action is inconsistent with, or fails to comply with, the provision of a comprehensive plan.").

[4] Added by Act of June 1, 1972, P.L. 333, *as amended*, 53 P.S. § 10609.1(c).

6

affirmed without taking additional evidence. GEI thereafter filed a notice of appeal of the Trial Court's order to this Court.[5]

Pursuant to the MPC, "[a] landowner who desires to challenge on substantive grounds the validity of a zoning ordinance or map or any provision thereof, which prohibits or restricts the use or development of land in which he has an interest may submit a curative amendment" along with site-specific plans for the property. 53 P.S. § 10609.1(a); Section 916.1(c)(2) of the MPC, added by Act of Dec. 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 10916.1(c)(2); *Piper Group, Inc. v. Bedminster Township Board of Supervisors*, 30 A.3d 1083, 1097 (Pa. 2011). The governing body of the municipality has exclusive jurisdiction to hear curative amendment petitions and must provide notice to the planning agency of the municipality to submit its recommendations. Section 609(c) of the MPC, 53 P.S. § 10609(c); Section 909.1(b)(4) of the MPC, added by Act of Dec. 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 10909.1(b)(4). If the governing body determines that the substantive validity challenge has merit, the governing body shall then consider the site-specific plans submitted by the landowner and shall also consider the impact of the proposed amendment on the natural resources and natural features of the municipality, other land uses within the municipality and the public resources of the municipality, including roads and sewer facilities. 53 P.S. §§ 10609.1(c), 10916.1(c)(5); *Piper Group*, 30 A.3d at 1097. The governing body "may accept a landowner's curative amendment, with or without revision, or may adopt an

---

[5] Where the court of common pleas has not taken additional evidence, our standard of review of an appeal of a denial of a curative amendment petition is limited to determining whether the governing body of the municipality abused its discretion or committed an error of law. *Larock v. Board of Supervisors of Sugarloaf Township*, 866 A.2d 1208, 1211 n.7 (Pa. Cmwlth. 2005).

7

alternative amendment which will cure the challenged defects." 53 P.S. § 10609.1(c); *see also Piper Group*, 30 A.3d at 1097.

A zoning ordinance is presumed to be valid, and the party challenging the ordinance bears the burden of showing that it is unreasonable, arbitrary or not substantially related to the police power interest that the ordinance purports to serve. *Realen*, 838 A.2d at 728; *C & M Developers, Inc. v. Bedminster Township Zoning Hearing Board*, 820 A.2d 143, 150-51 (Pa. 2002). When a landowner challenges the substantive validity of a zoning ordinance, courts employ a substantive due process inquiry, requiring a balancing of the landowner's rights against the public interest sought to be protected by the police power. *Realen*, 838 A.2d at 728; *Penn Street, L.P. v. East Lampeter Township Zoning Hearing Board*, 84 A.3d 1114, 1120 (Pa. Cmwlth. 2014). Thus, an ordinance will be found unreasonable and not related to the police power if it is unduly restrictive or exclusionary; similarly, an ordinance may be found arbitrary where it results in disparate treatment of similar landowners without a reasonable basis for such disparate treatment. *Realen*, 838 A.2d at 728; *C & M Developers*, 820 A.2d at 151. "[T]he function of judicial review, when the validity of a zoning ordinance is challenged, is to engage in a meaningful inquiry into the reasonableness of the restriction on land use in light of the deprivation of landowner's freedom thereby incurred." *Realen*, 838 A.2d at 729 (quoting *Hopewell Township Board of Supervisors v. Golla,* 452 A.2d 1337, 1342 (Pa. 1982)).

GEI argues that the 2006 rezoning of the Property in the OS district to create an island of preserved open space constitutes invalid spot zoning. Spot zoning is the "singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for

8

the economic benefit of the owner of that lot or to his economic detriment." *Realen*, 838 A.2d at 730 (quoting *Appeal of Mulac*, 210 A.2d 275, 277 (Pa. 1965)). The most important factor in a spot zoning analysis is whether the parcel at issue "is being treated unjustifiably different from similar surrounding land." *Realen*, 838 A.2d at 730 (quoting *Schubach v. Silver,* 336 A.2d 328, 336 (Pa. 1975)); *see also Penn Street*, 84 A.3d at 1121. "There is no precise formula for determining whether a classification of property constitutes spot zoning and cases should be decided on the facts guided by case law." *Penn Street*, 84 A.3d at 1121 (quoting *Sharp v. Zoning Hearing Board of Radnor Township*, 628 A.2d 1223, 1228 (Pa. Cmwlth. 1993)); *Atherton Development Co. v. Township of Ferguson,* 29 A.3d 1197, 1204 (Pa. Cmwlth. 2011).

"Spot zoning challenges have at their conceptual core the principle that lawful zoning must be directed toward the community as a whole, concerned with the public interest generally, and justified by a balancing of community costs and benefits." *Realen*, 838 A.2d at 729. As this Court further explained in *Township of Plymouth v. County of Montgomery,* 531 A.2d 49 (Pa. Cmwlth. 1987) (*en banc*):

> The key point is that when a municipal governing body puts on blinders and confines its vision to just one isolated place or problem within the community, disregarding a community-wide perspective, that body is not engaged in lawful zoning, which necessarily requires that the picture of the whole community be kept in mind while dividing it into compatibly related zones by ordinance enactments. In other words, legislation as to a spot is the antithesis of zoning, which necessarily functions within a community-wide framework.... [Z]oning, to be valid, must be in accordance with a rational and well considered approach to promoting safety, health and morals and a coordinated development of the whole municipality.

9

*Id.* at 57. "Spot zoning must be clearly established; if the validity of the rezoning ordinance is debatable, it must be permitted to stand." *Penn Street*, 84 A.3d at 1121 (quoting *Atherton Development,* 29 A.3d at 1204).

GEI contends that the Township has not put forth any justifiable reason to treat the Property differently than the land surrounding it. GEI argues that the Property's history of use as a golf course for several decades and the community's desire to preserve it as such does not justify its current zoning in the OS district because what is relevant in a spot zoning analysis is the physical characteristics of the land, not the history of the land's development or its current uses. GEI asserts that there is no evidence that the Property has any distinguishing physical characteristics compared to the land surrounding it that would make it unsuitable for residential development, noting that the Board found that the Property has similar geography and topology as the surrounding parcels and is also connected to public sewer and water. (Board Decision, F.F. ¶¶38-40.) GEI further argues that the approvals for the Townes on the Green and Bent Water Crossing golf cluster developments on surrounding tracts are irrelevant because the golf cluster development provisions were removed in the 2006 amendments to the Ordinance and because these approvals were not based on a distinct physical characteristic of the land that would justify the drawing of a zoning border.

GEI relies on our Supreme Court's decision in *Realen* where the Court ruled that a golf course was invalidly spot zoned in an agricultural district in order to preserve it as open space. In *Realen*, the 135-acre golf course was located in Upper Merion Township at the confluence of four major highways and "entirely surrounded by an urban landscape, and immediately adjacent to what is currently the world's largest shopping complex at one discrete location." 838 A.2d at 721.

10

The golf course was founded in the 1920s and was originally zoned in the Agriculture zoning district in 1953, which permitted only agricultural, municipal and single-family detached home uses. *Id*. at 721-22. Over the ensuing decades the vast majority of the township was rezoned to allow for more intensive commercial, residential and office uses so that only two other parcels remained in the Agricultural district: a 7.3 acre parcel containing a turnpike interchange and a .5 acre parcel improved with a non-conforming residential structure. *Id*. at 722.

The equitable owner of the golf course in *Realen*, seeking to develop the property with a mix of hotel, retail, commercial and either residential or office uses, brought a substantive validity challenge to the zoning of the golf course but the Township denied the challenge. *Id*. at 726. The Supreme Court reversed this determination, holding that "the agricultural zoning [of the golf course], designed to prevent development of the subject property and to 'freeze' its substantially undeveloped state for over four decades in order to serve the public interest as 'green space,' constitutes unlawful 'reverse spot zoning' beyond the municipality's proper powers."[6] *Id*. at 721. The Court disagreed with Upper Merion Township's contention that the large size of the golf course parcel made it more amenable to agricultural use than the smaller surrounding parcels, noting that the size of the tract at issue is irrelevant in a spot zoning analysis. *Id.* at 730. The Court further rejected the township's other principal rationale for the golf course's agricultural zoning – that the golf course was surrounded by major roadways – observing that it would turn "reason and land planning precepts on their head to assert, as the zoning board's decision implies, that this tract's *restricted, agricultural zoning* is

_____

[6] Reverse spot zoning occurs where an "island" develops as a result of a municipality's failure to rezone a portion of land to bring it into conformance with similar surrounding parcels that are indistinguishable. *Penn Street*, 84 A.3d at 1121; *Atherton Development*, 29 A.3d at 1204.

11

justified by its ready access to the region's primary arterial roads on every hand." *Id.* (emphasis in original). Thus, the Court concluded that "no characteristic of the Golf Club's property justifies the degree of its developmental restriction by zoning as compared to the district designation and use of all of the surrounding lands both within the Township and in the adjoining municipality. This is spot zoning." *Id.*

GEI argues that in this case, as in *Realen*, the Township forced a single private landowner to bear the burden of the community's desire to preserve a tract of open space for the surrounding developed land. GEI contends that the Property here, like the golf course in *Realen*, contains similar physical characteristics to the surrounding parcels and that the only distinguishing factor is that the Property was developed as a golf course decades ago. Furthermore, GEI asserts that, just as in *Realen*, the zoning amendment that it seeks would only match the surrounding land and would lead to no more intensive uses than already exist.

We agree with the Trial Court and the Board that GEI did not meet its heavy burden of demonstrating that the Property was spot zoned. While this case at first glance appears similar to *Realen*, the Property here is not located in the midst of dense development, adjacent to multiple highways and a large suburban shopping mall as in *Realen*. Instead, as the Board explained in its decision, a significant portion of the Township is forest, agriculture or open space, with 4,014 acres of undeveloped land representing 22% of the Township's total land area. (Board Decision, F.F. ¶37; Dennis Glackin Expert Witness Report at 6, R.R. 182a.) Furthermore, not all of the parcels surrounding the Property are developed, with several parcels to the east of the Property currently undeveloped or with agricultural uses, and the surrounding developments are almost entirely single-

12

family detached residential properties, unlike the intensive commercial and residential development bordering the golf course in *Realen*. (Board Decision, F.F. ¶24, C.L. ¶19; Aerial Map, R.R. 200a.)

Furthermore, the Board explained in its decision that, unlike in *Realen* where the agricultural zoning of the golf course was clearly incompatible with the surrounding commercial and residential development, the OS zoning district is consistent with and complimentary to the RG district that it borders. (Board Decision, F.F. ¶36, C.L. ¶17); *see Atherton Development,* 29 A.3d at 1209 (rejecting spot zoning challenge in part because property owner failed to show that property could not be used in a manner consistent with the challenged zoning classification). The record is devoid of evidence that the residential properties surrounding the Property hinder its current use as a golf course in line with its OS zoning. In addition, the OS and RG districts share several overlapping uses, permitting forestry, municipal uses and parks. (Ordinance §§ 201.2, 204.2.) The compatibility of the Property as a golf course was demonstrated by GEI's prior approvals for the Bent Water Crossing and Townes on the Green golf course cluster developments under the pre-2006 zoning ordinance, which used the Property for the open space and 100-acre minimum development area requirements. (Aug. 22, 2013 H.T. at 105-29, R.R. 1770a-1794a.) GEI affirmed in its conditional use applications for the Bent Water Crossing and Townes on the Green that these proposed developments and the golf course were "compatible with the existing development of the vicinity." (Board Decision, F.F. ¶64; Conditional Use Applications, R.R. 538a, 547a; *see also* Sept. 10, 2013 H.T. at 87, 144, R.R. 1442a, 1499a.)

13

The instant case is also distinguishable from *Realen* because the 2006 rezoning of the Property as OS was consistent with the Township's comprehensive plan. As the Court in *Realen* noted, consistency with a municipality's comprehensive plan and a community-wide framework for land use regulation has long been held to be a key factor in the spot zoning analysis. *Realen*, 838 A.2d at 729; *see also Schubach*, 336 A.2d at 337-38; *Fisher v. Cranberry Township Zoning Hearing Board*, 819 A.2d 181, 186 (Pa. Cmwlth. 2003); *Sharp*, 628 A.2d at 1228. The Township's comprehensive plan was adopted in 2004 following an extensive, three-year process involving town hall hearings, studies and reports from various professionals and review of the responses to surveys sent to 4,000 households. (Board Decision, F.F. ¶28; Aug. 22, 2013 H.T. at 80-81, R.R. 1745a-1746a.) The comprehensive plan cited the goal of providing a "comprehensive system of parks, recreation, and open space that will meet all active and passive recreational needs of all residents in the Township and enhance the community design, identity and vitality." (Board Decision, F.F. ¶30.) In order to further the goal of protecting recreational and open space locations, the comprehensive plan stated that the Property should be included within an Open Space Overlay District. (Board Decision, F.F. ¶31; June 6, 2013 H.T. at 50-53, R.R. 1111a-1114a.)

The comprehensive plan also noted the significant stress on the local and regional road network, specifically Valley Green Road, the road which would provide access to all development on the Property. Valley Green Road is only 22 feet wide with no shoulders in the vicinity of the Property and, as a collector road, falls short of state standards that require a 24-foot wide roadway with 8-foot wide shoulders. (Board Decision, F.F. ¶¶47-48; Sept. 10, 2013 H.T. at 15, R.R. 1230a.) The comprehensive plan and the Township's Subdivision and Land Use Ordinance

provide that collector roads, such as Valley Green Road, have a 60-foot wide right-of-way, wider than Valley Green Road's 33-foot right-of-way in the area where it runs through the Property. (Subdivision and Land Use Ordinance § 603-12; Board Decision, F.F. ¶49; Comprehensive Plan at 7-3, R.R. 598a; Sept. 10, 2013 H.T. at 16-17, R.R. 1231a-1232a.) Furthermore, the comprehensive plan also identifies several intersections of Valley Green Road and other Township roadways in the immediate vicinity of the Property as being among the most problematic areas of the Township. (Board Decision, F.F. ¶34; Comprehensive Plan at 7-7, 7-8, R.R. 664a-665a; June 6, 2013, H.T. at 126-27, R.R. 1187a-1188a.) These problems would be exacerbated by the increase in traffic as a result of GEI's proposed development of the Property: the Board found that, based upon the traffic data produced by GEI for the curative amendment and other proposals, there would be a 440% increase in Valley Green Road traffic if GEI entirely built out the area based on earlier proposals and the Property's proposed change to RG zoning. (Board Decision, F.F. ¶45; Grove Miller Engineering Traffic Impact Assessment, R.R. 245a-300a; Sept. 10, 2013 H.T. at 15, R.R. 1230a.) In addition, the Intervenors' expert determined that Valley Green Road would lead to a significant increase in the traffic crash rate at area intersections and "far reaching detrimental impacts" on the safety of local roads. (Joseph Fiocco Report at 8, R.R. 577a, Aug. 22, 2013 H.T. at 43-54, R.R. 1708a-1719a.)

In sum, we conclude that, in light of the reasonable justification articulated by the Board for treating the Property differently than other similarly situated nearby parcels, GEI did not demonstrate that the Property was spot zoned. GEI further argues, however, that, separate and apart from its contention that the Property was spot zoned, the zoning of the Property was arbitrary and irrational

15

because the surrounding property had the same characteristics as surrounding parcels and there was no reason for the distinction drawn between the OS zoning for the Property and the RG zoning for its neighbors. We also reject this argument. As described above, the rezoning of the Property in the OS district in 2006 was not arbitrary or irrational because this rezoning was in accordance with the Township's comprehensive plan, which was the result of a lengthy, considered process, involving input from professionals and residents. The comprehensive plan provided a reasonable justification for including the Property as part of the Open Space Overlay District, including the need of the community for open space and recreational areas within the township and concerns regarding road access to the Property. Furthermore, the OS zoning designation was consistent with the conditional use approvals incorporating the Property in the golf course cluster developments that GEI obtained under the Ordinance prior to the 2006 amendments.

Accordingly, we affirm the Trial Court's conclusion that the Board did not abuse its discretion or commit an error of law in rejecting GEI's substantive validity challenge to the Ordinance. In light of this determination, we do not address the proposed curative amendment to the Ordinance or the site-specific plans that GEI submitted with its application.

_____
JAMES GARDNER COLINS, Senior Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Golf Enterprises, Inc., : 
                       Appellant : 
           v. : 
Newberry Township Board of : 
Supervisors : 
           v. : No. 97 C.D. 2016 
Valley Green Residents Organization, : 
Anthony Miller, Mary Miller, : 
LeeAnn Menut, Kenneth Menut, : 
William Hendrickson, Edna : 
Hendrickson, LeAnn Pague, : 
Edward Pague, Stanley Olejarczyk, : 
Nancy Olejarczyk, John Elliott, and : 
Amy Elliott : 

# **O R D E R**

AND NOW, this 25th day of April, 2017, the order of the Court of Common Pleas of York County in the above-captioned matter is AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge