623 A.2d 965

**PENNSYLVANIA LIQUOR CONTROL BOARD, Appellant,**

v.

**MARBLE HALL INVESTMENT COMPANY,**
**Towamencin Tavern.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 9, 1992.

Decided March 26, 1993.

428

Francis X. O'Brien, Jr., Chief Counsel, for appellant.

Lawrence F. Flick for appellee.

Before McGINLEY and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

The Pennsylvania Liquor Control Board (PLCB) appeals an order of the Court of Common Pleas of Montgomery County (common pleas court) which reversed its denial of a liquor license transfer application filed by Marble Hall Investment Company (Marble Hall).

Marble Hall operated the Towamencin Tavern (Tavern) at the corner of Forty Foot Road and Allentown Road in Towamencin Township (Township), Montgomery County. The Tavern was operated under a restaurant retail dispenser liquor license issued from the PLCB.[1] The building where Marble Hall operated its Tavern was owned and leased from the Vesterra Corporation (Vesterra). In addition to owning the building housing Marble Hall's Tavern, Vesterra owned an adjacent tract of land which it was in the process of subdividing for a shopping center to be known as the Towamencin Village Square Shopping Center. In conjunction with Vesterra's development plan, the Township made plans to widen Forty Foot Road. In order to widen Forty Foot Road, the township needed to acquire land over Vesterra's property on which the building housing Marble Hall's tavern was located.

1. Said license has been in safekeeping with the PLCB since October 25, 1989.

Vesterra and the Township reached an agreement[2] whereby Vesterra deeded to the Township the land needed for the widening of Forty Foot Road in lieu of the Township having to commence condemnation proceedings pursuant to the Eminent Domain Code.[3] After unsuccessfully attempting to relocate within the Township, Marble Hall filed an application with the PLCB for a place to place transfer of its liquor license to Upper Merion Township, Montgomery County. Marble Hall filed its application pursuant to Section 468(a) of the Liquor Code (Code).[4]

Hearings, concerning the transfer of Marble Hall's license, were held before a hearing examiner on November 30, 1990 and April 2, 1991.[5] The two issues addressed at the hearing were, 1) whether Marble Hall lost its premises due to governmental exercise of the right of eminent domain, and 2) whether another suitable building could be found for the Tavern within the Township.[6]

On April 15, 1991, the hearing examiner issued a report containing his findings of fact and recommending that the application for transfer be approved. The hearing examiner characterized the Township's activity as "an indirect condemnation" and also found that Marble Hall "exerted great effort

2. The record clearly establishes that Marble Hall, as Vesterra's tenant, did not participate in the agreement between Vesterra and the Township.

3. Act of June 22, 1964, P.L. 84, *as amended*, 26 P.S. §§ 1-101—1-903.

4. Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4-468(a). Section 468(a) provides, in pertinent part, the following:

   The board, in its discretion, may transfer an existing restaurant retail dispenser or club license from one municipality to another in the same county regardless of quota limitations provided for in this act, if sales of liquor or malt and brewed beverages are legal in such other municipality and if the restaurant retail dispenser or club lost the use of the building which it was located due to governmental exercise of the right of eminent domain and no other suitable building can be found in the first municipality. . . .

5. No protestants appeared at the hearing.

6. A third issue was raised at the hearing concerning whether approval of Marble Hall's transfer would adversely affect the health, welfare, peace and morals of the neighborhood within a radius of 500 feet of the proposed establishment. However, no testimony was presented on this issue and the issue has not been raised in any subsequent proceeding.

to locate another premises within the same municipality." (R.R. 47a.) On June 10, 1991, the PLCB, notwithstanding the hearing examiner's findings and recommendation, issued an order denying Marble Hall's application for a place to place transfer of its license. The PLCB based its decision on the grounds that Marble Hall did not "definitely establish that use of the presently licensed premises has been lost due to governmental exercise of the right of eminent domain or that another suitable building or premises cannot be found in the same municipality." (R.R. 48a.) Marble Hall appealed to the common pleas court where the case was presented, by agreement of the parties, upon the record made at the administrative hearing. The common pleas court adopted the findings, conclusions and recommendation of the hearing examiner and reversed the PLCB. The common pleas court determined, based upon the recommendation of the hearing officer, that the property was, in effect, lost due to the government's exercise of the right of eminent domain and that no other suitable building could be found within the Township. It is from this decision that the PLCB appeals.

The PLCB contends that the common pleas court erred in finding that the eminent domain exception to the quota restrictions of the Code applies to the instant case. The PLCB argues that Marble Hall failed to show that the premises were lost by the government's exercise of the right of eminent domain and that a suitable building could not be found within the Township.[7]

■ Our scope of review on an appeal from the common pleas court, reversing the PLCB on a licensing matter, is limited to a determination of whether the court abused its discretion or committed an error of law. *Pennsylvania Liquor Control Board v. 901–03 11th Street Bar*, 126 Pa.Commonwealth Ct. 491, 560 A.2d 280 (1989). Whether or not, under the facts of this case, the Township exercised the power of eminent domain and whether another suitable building

7. There is a third requirement under Section 468(a) that the sale of alcoholic beverages is legal in the municipality where the license is sought to be transferred. This is not an issue in this case.

within the Township could be found are clearly questions of law. Although our reasoning differs from that of the common pleas court, we affirm its decision and find that no error of law or abuse of discretion was committed.[8]

We will first address the issue of whether Marble Hall lost the use of the building in which it conducted business pursuant to its restaurant retail dispenser license due to the government's exercise of the right of eminent domain. At the hearing, Clifford A. Stout, a consulting civil engineer employed by the Township, testified that in his review of Vesterra's subdivision plan, it would be necessary for the Township to acquire a right-of-way through that portion of Vesterra's property housing Marble Hall's tavern. Stout testified that rather than the Township commencing formal condemnation proceedings to acquire the right-of-way, which the Township was prepared to do, Vesterra and the Township entered into the above stated agreement whereby Vesterra deeded the property to the Township. Thereafter, the building housing the Tavern was demolished by the Township and Forty Foot Road was widened.

This Court dealt with a similar factual situation in the case of *Harris v. Pennsylvania Liquor Control Board*, 113 Pa.Commonwealth Ct. 467, 537 A.2d 386 (1988). *Harris* involved a licensee whose landlord was informed that plans had been made to build a health care center at the location where the licensee's establishment was located. The landlord was informed that the Borough Council was looking into the possibility of condemnation proceedings. No formal condemnation proceedings took place in *Harris* because the landlord and the licensee entered an agreement with the private developer of the health care center whereby the licensee was paid for the cancellation of his remaining lease. After failing to locate a suitable building for its business within the same municipality, the licensee applied for a transfer pursuant to

8. It has long been recognized that a reviewing court may affirm an order if the order is correct for any reason, regardless of the reasons given by the tribunal whose order is under review. *Department of Public Welfare v. Dauphin County,* 90 Pa.Commonwealth Ct. 295, 495 A.2d 214 (1985).

Section 468(a). Both the PLCB and the common pleas court denied the licensee's application for a transfer, contending that Section 468(a) was not applicable. We reversed and held that Section 468(a) was applicable, though no actual condemnation proceedings took place, because condemnation was inevitable absent an agreement being reached. We stated the following:

Here there was an immediate threat to begin condemnation proceedings unless an agreement was reached which would render unnecessary such condemnation. Rather than facing the mere possibility of condemnation ... appellant here had the proverbial gun placed to his head during the negotiations by the borough's express threat to condemn unless an agreement was reached.

*Harris*, 113 Pa.Commonwealth Ct. at 471, 537 A.2d at 388.

■ The plain language of Section 468(a) does not impose the qualification that a governmental entity actually commence condemnation proceedings and proceed to judgment in order for Section 468(a) to be applicable. Rather, Section 468(a) merely provides that the premises in question be lost "due to the governmental exercise of the right of eminent domain." Further, our holding in *Harris* makes it clear that a governmental entity need not formally proceed under the Eminent Domain Code in order to "exercise the right of eminent domain." For these reasons, we hold that where a governmental entity, here the Township, bona fide seeks to acquire an interest in private real property for a public purpose and the private owner of the real property interest transfers, either by deed, conveyance, grant, dedication, or the like, said property interest to the governmental entity in lieu of the government instituting proceedings under the Eminent Domain Code, such transfer of the property interest by the private owner is, under Section 468(a), deemed to be as the result of "governmental exercise of the right of eminent domain."

■ Here, the testimony of the Township's consulting engineer clearly established that the Township planned to widen Forty Foot Road, acquire a portion of Vesterra's property, and commence condemnation proceedings if the agreement

between Vesterra and the Township had not been entered. Vesterra's deed of the property needed by the Township was clearly the result of the Township's exercise of the right of eminent domain. Marble Hall, thus, lost its property due to the Township's exercising its right of eminent domain.

Next, we address whether Marble Hall was unable to find a suitable building within the Township to house its Tavern.[9] Marble Hall presented the testimony of Francis A. Carr, its president, who attempted to locate a building for the Tavern within the Township. Carr testified that though he inquired of seven or eight locations that were available, all of the locations were "either within 300 feet of a restrictive institution of (sic) 200 feet of another licensee." (R.R. 19a.) In addition, Marble Hall presented the testimony of three realtors it employed to locate another building for the Tavern. All three realtors were unable to find an alternative location for the Tavern, though an offer was made for the full asking price at one location and was subsequently rejected. Like Carr, the realtors were unable to find buildings that were not within 300 feet of restrictive institutions or 200 feet of other licensees. Also, the realtors were unable to locate buildings large enough to house the Tavern or provide ample parking. The realtors testified that finding a location was difficult because Towamencin Township was zoned primarily for residential use.

While Section 468(a) contains the requirement that a licensee seeking a transfer to another municipality under the quota restriction exception show that "no other suitable building can be found in the first municipality", the Code does not define what meaning the term "suitable building" is to be given. Also, the term "suitable building" is not found at any other Code section. It has long been a rule of statutory construction that when undefined words are found in a statute, they are to be given their common meaning. *See* the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a). *See also Browning–Ferris v. Department of Environmental Resources,*

**9.** It is undisputed that the proposed licensed premises meet the requirements of the Code and the regulations and are suitable for licensing.

143 Pa.Commonwealth Ct. 243, 598 A.2d 1057 (1991). Webster's Third New International Dictionary defines "suitable" as "adapted to a use or purpose; having the necessary qualifications; meeting requirements" *Id.* at 2286 (1966). "Building" is defined as "a constructed edifice designed to stand more or less permanently, covering a space of land, usually covered by a roof and more or less completely enclosed by walls . . ." *Id.* at 292.

The PLCB argues that Marble Hall admitted to finding "suitable buildings" within Towamencin Township when Carr testified that he found buildings that were within 300 feet of restrictive institutions. The PLCB asserts that these buildings are "suitable" since it is within the PLCB's discretion to grant a transfer to such locations. We disagree.

The PLCB has concluded that the term "suitable building" has reference to Section 404 of the Code, 47 P.S. § 4–404, which sets forth distance restrictions as to the location of a licensed premises.[10] However, the fact that the PLCB has the discretion to waive the distance restrictions of the Code is immaterial to determining whether a "building" is suitable for licensing. Under the Code and the PLCB's regulations, there are specific provisions which deal with the physical requirements of a "building" where one seeks to obtain or transfer a license.[11] These physical requirements are separate and specific to the actual structure where the license is sought to be conducted. We hold, in conformity with the common meaning definitions of "suitable" and "building" as set forth herein-

10.  Section 404 provides in pertinent part:
[T]he board may, in its discretion, grant or refuse . . . transfer if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school, or public playground . . . or . . . is within two hundred feet of any other premises which is licensed by the board . . . The board shall refuse . . . transfer . . . to a new location if, in the board's opinion, such . . . transfer would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet . . . The board shall refuse any application for . . . the transfer of any license to a location where the sale of liquid fuels or oil is conducted.

11.  *See* Liquor Code § 403, 47 P.S. § 4–403; *See* PLCB's regulations, 40 Pa.Code §§ 3.32, 3.51–3.56, 5.41, 5.42, 5.84.

above, the term "suitable building" as used in Section 468(a) of the Code is with reference to the physical structure of the building. The distance restrictions cited by the PLCB do not refer to whether or not a "building" is suitable for licensing. For example, a "building" may be "suitable" for licensing, i.e., it meets all the physical requirements set forth in the Code and the regulations, however, it may not meet the distance restrictions of Section 404 and therefore could not be used to operate a licensed establishment. On the other hand, a "location" may meet the distance restrictions of Section 404, but the "building" may not meet the physical requirements set forth in the Code and the regulations and therefore would not .constitute a "suitable building".

A licensee seeking a transfer to a location in another municipality under Section 468(a) does so because his premises have been lost due to the government's exercise of the right of eminent domain. A licensee does not make the decision to relocate his business in such a situation; the government has made it for him. Under a voluntary transfer situation, where the licensee makes the decision to move his business, the licensee seeks out locations that he deems to be economically beneficial [12] to conducting a license. If the licensee, in a voluntary transfer, finds a location which falls within the distance restrictions of the Code, the licensee makes the decision of whether or not to go to the PLCB and apply to have the restrictions waived. Here however, the PLCB is asserting that a licensee who is seeking transfer under Section 468(a) must consider locations which fall within the distance restrictions of Section 404 as being available. The PLCB is, in effect, attempting to require that a licensee who loses his premises through governmental exercise of the right of eminent domain apply to the PLCB for transfer to any and every

12. The PLCB states in its brief to this Court that Marble Hall wishes to transfer its license to Upper Marion Township because Upper Marion is a "thriving, heavily-trafficked and heavily populated" area. This gratuity by the PLCB has no foundation in the record. Additionally, we remind the PLCB that the sale of alcoholic beverages pursuant to a restaurant liquor license issued by the PLCB is a legitimate business in Pennsylvania and as a business it is the purpose of the licensee to make a profit.

location in the original municipality, regardless of the distance restrictions, before a transfer outside the municipality can be sought. There is nothing in the Code or the regulations granting such authority to the PLCB and this Court is powerless to do so.

Here, Marble Hall was clearly unable to find a location within the Township that met the distance restrictions of Section 404; accordingly, the trial court neither abused its discretion or committed an error of law and we will affirm its order.

## ORDER

AND NOW, this 26th day of March, 1993, the order of the Common Pleas Court of Montgomery County is affirmed.

McGINLEY, Judge, dissenting.

I respectfully dissent. While it is apparent that Marble Hall lost the use of its premises through no fault of its own, the agreement between Vesterra and the Township in this case is distinguishable from the agreement referred to in *Harris.*

In *Harris,* the governmental entity expressed interest in condemning the building in which the licensee's business was located, which left the licensee's landlord with the option either to negotiate an agreement or wait for the property to be condemned. Here, to develop the shopping center Vesterra deeded the land needed for the widening of Forty Foot Road. This was not for the public good but a result of Vesterra's decision to build the shopping center.

The fate of Marble Hall's premises was at all times within the control of its landlord, Vesterra. Its loss was not due to a direct or indirect exercise of eminent domain. Section 468(a) requires that the premises be lost, as the majority recognizes, "due to the governmental exercise of the right of eminent domain." Clearly this requirement was not met. I would reverse.